In re NEW MAGMA IRRIGATION & DRAINAGE DISTRICT, a municipal corporation of the State of Arizona, Debtor.

NEW MAGMA IRRIGATION & DRAINAGE DISTRICT, Debtor/Plaintiff,

v.

The BOARD OF SUPERVISORS OF MARICOPA COUNTY; The Board of Supervisors of Pinal County; and James Turnbull, Treasurer of Pinal County, and Douglas Todd, Treasurer, Maricopa County, Defendants.

Bankruptcy No. 94–00211–TUC–JMM. Adv. No. 94–00117.

United States Bankruptcy Court, D. Arizona.

Aug. 11, 1994.

---

**530**

William D. Baker, Ellis, Baker & Porter, Ltd., Phoenix, AZ, for Debtor.

Lowell Rothschild, Tucson, AZ, for Pinal County.

Barbara L. Caldwell, Maricopa County Attorney, Phoenix, AZ, for Maricopa County.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

JAMES M. MARLAR, Bankruptcy Judge.

This matter having come before the Court pursuant to the Debtor's *Motion for Preliminary Injunction & Declaratory Relief,* filed June 21, 1994. William D. Baker and George King represented the Debtor. Both Pinal County, through attorney Lowell Rothschild, and Maricopa County, through attorney Barbara Caldwell, responded. Pinal County filed a *Motion to Dismiss Complaint, Or In The Alternative, For Abstention,* and Maricopa County filed a *Motion to Dismiss.* After review of the entire file, and having heard the arguments of counsel, the Court finds, concludes and rules on the record as established by the parties, as follows:

### *FINDINGS OF FACT*

1. New Magma Irrigation & Drainage, a municipal corporation of the state of Arizona, filed this Chapter 9 proceeding on January 27, 1994.

2. The Debtor's physical improvements were constructed with funds from two sources.

3. Approximately 80% was advanced by the United States Department of Interior Bureau of Reclamation.

4. The remaining 20% was funded through the issuance of bonds [1], authorized through a special election held in September, 1983.

5. Historically, the Debtor has raised money to pay its obligations through several means.

---

1. At this point the Court issues no opinion as to the nature of the bonds.

6. The Debtor sells irrigation water to persons or entities owning or controlling lands within its district at prices which include the cost of the water and the cost of operation and maintenance of the district and its facilities.

7. Another source of funding is the levy of taxes upon the lands located within the district.

8. The amount of taxes to be levied has historically been determined by the Debtor, which adopts a budget and submits it to the Boards of Supervisors, which, in turn, have relied upon such submission to adopt a uniform rate of tax on every acre of land in the Debtor's district, and levies and assesses that rate as it would county and state taxes.

9. Historically, the amount of the levy has been an amount necessary to pay a portion of the amount due on the bonds, plus a required statutory fifteen percent (15%). In 1994, the Debtor adopted and submitted to the Boards of Supervisors, a budget which called for a tax in the amount of $21.3901 per acre.

10. This estimate is similar to the assessments made in previous years, but it is not sufficient to fully satisfy all of the obligations of the Debtor.

11. The Debtor has declined to recommend larger assessments in its budget, because it hopes to reduce its indebtedness through this chapter 9 proceeding, and because it does not believe that the market can bear an increase.

12. Despite the Debtor's recommendation, Pinal and Maricopa Counties are preparing to assess a tax of $37.26 per acre on the district's landowners.

13. The Debtor has sought injunctive relief to prevent an assessment and/or levy beyond that which was recommended by the Debtor and a declaration that the automatic stay of 11 *U.S.C.* §§ 362 and 922 applies to prevent such assessments.

14. The counties have sought to dismiss the complaint for lack of jurisdiction or, in the alternative, for this Court to abstain.

## CONCLUSIONS OF LAW AND DISCUSSION

### I. *Jurisdiction of the Bankruptcy Court.*

 As a threshold matter, the Court must consider whether it has jurisdiction over the present dispute. The counties assert that a United States Bankruptcy Court is without jurisdiction to issue an injunction, temporary or otherwise, of the assessment and/or levy of taxes against the landowners-nondebtors. This Court has jurisdiction. Pursuant to 28 *U.S.C.* § 1334(b), the district court has original jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." Another federal statute, 28 *U.S.C.* § 157(a), further provides that such jurisdiction may be referred to the bankruptcy court in "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or relating to a case under title 11." In the Third, Fourth, Fifth, Eighth, and Ninth Circuits the test for determining whether a civil proceeding is "related" to the bankruptcy (the minimum requirement for bankruptcy court jurisdiction) "is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.*" *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988) *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3rd Cir.1984) (emphasis in original); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 93 (5th Cir.1987); *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch, U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir.1987); *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1002 n. 11 (4th Cir.) (dicta), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Under this standard, surely, the present dispute is related to a proceeding which arises under title 11.

 That, however, does not resolve the issue because the Bankruptcy Court may hear, but not *decide*, matters that are not core proceedings. 28 *U.S.C.* § 157(c). Core proceedings are defined in 11 *U.S.C.* § 157(b), through a nonexclusive list, as including "matters concerning the administration of the estate" and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-credi-

tor or the equity security holder relationship, except personal injury tort or wrongful death claims." 28 *U.S.C.* § 157(b)(A) & (O). Under the circumstances, the assessment or levy of taxes, which relate directly to and concern payment of obligations which are the subject of this case and which may have a direct effect on the Debtor's future ability to service its potentially reorganized debt, falls squarely within these two statutory definitions of a core proceeding.

■■■ In so concluding, the Court recognizes that these two "catch-all" definitions of a core proceeding should be relied upon with great care and caution. *See In re Tucson Estates, Inc.*, 912 F.2d 1162 (9th Cir.1990). However, this is a chapter 9 proceeding. It is entirely different from any other case presently pending in the District of Arizona. It is certainly different from the other types of chapters which accord relief to entities or individuals. Its ultimate purpose is designed to beneficially affect "citizens," rather than stockholders or individuals. Through this proceeding, the debtor, accorded the status of a municipal entity, seeks to reorganize and adjust the very debt which the counties seek to pay through the assessment, levy, and collection of taxes from and against its nondebtor citizenry. The "nondebtors" constitute the entire constituency of the reorganizing municipality. Thus, it is difficult to imagine a situation which would be more central to this proceeding than the assessment and/or levy of taxes against the citizen body. Indeed, this is recognized specifically in § 922, which extends an injunction to actions against **nondebtors**. 11 *U.S.C.* § 922(a)(2) ("A petition filed under this chapter operates as a stay, applicable to all entities, of— . . . (2) the enforcement of a lien on or arising out of taxes or assessments **owed to the debtor** (emphasis added)"). Thus, this Court has jurisdiction over this dispute and there is no need to abstain. The issue, then, is whether this Court has the *authority* to issue an injunction.

## II. *Authority To Enjoin Actions Against Nondebtors.*

■■ On this point, the Court disagrees, in principle, with the contention that a Bankruptcy Court is without authority to enjoin actions against non-debtors. Although such an injunction is certainly the exception to the rule, several of the Circuit Courts of Appeals have used the authority of 11 *U.S.C.* § 105 to impose a **permanent** injunction against nondebtors, and the Ninth Circuit has certainly left the door open for a similar result in this circuit, if presented with appropriate facts. In 1989, the Fourth Circuit permanently enjoined actions against the officers and directors of A.H. Robins Co, Inc. *In re A.H. Robins Co., Inc.*, 880 F.2d 694 (4th Cir.1989). There, the debtor was a defendant in thousands of personal injury suits arising out of its distribution of the defective Dalkon Shield. In many of the suits, other parties were also named as defendants along with the debtor's executives. After establishing both a bar date and the body of claims, the plan of reorganization specified two classes for plaintiffs claiming a right of action against the debtors, its officers, and/or certain other entities including the debtor's insurer. The Plan included a provision which allowed members of Class B to elect to forgo the benefits provided in the plan and retain their right to sue certain insurance carriers and medical providers. However, if they elected this treatment, the Plan permanently enjoined them from suing all third parties, including the debtor's officers and directors, other than the specifically identified entities.

The Second Circuit has also stayed actions against nondebtors. *In re Johns–Manville Corp.*, 801 F.2d 60 (2nd Cir.1986); *MacArthur Co. v. Johns–Manville Corp.*, 837 F.2d 89 (2nd Cir.1988). In 1986 the Second Circuit upheld the bankruptcy court's injunction of a state court action to compel a shareholders' meeting. In so doing, the court stated:

"... in our view, if the bankruptcy court may ever use its equitable powers under section 105(a) to enjoin actions pursued in other courts as 'concerning the administration of the estates' under section 157(b)(2)(A), it may exercise that power where there is a basis for concluding that rehabilitation, the very purpose for the bankruptcy proceedings, might be undone by the other action. We therefore con-

clude that the bankruptcy court had jurisdiction to issue the injunction."

*In re Johns–Manville Corp.*, 801 F.2d 60 (2nd Cir.1986).

Admittedly, the Ninth Circuit has not been as eager to allow the injunction of actions against nondebtors. However, the Ninth Circuit Court has certainly suggested that it would support such an action under circumstances such as the present. *See In re American Hardwoods, Inc.*, 885 F.2d 621 (9th Cir.1989). In *American Hardwoods*, a chapter 11 debtor sought to permanently enjoin a creditor from enforcing a state court judgment against the debtor's guarantors. The appeals court held that the bankruptcy court lacked jurisdiction and power to permanently enjoin a creditor, beyond confirmation of the plan, from enforcing a state court judgment against a nondebtor. The focus of the court's analysis was § 105 of the Bankruptcy Code, which the court concluded "does not authorize relief inconsistent with more specific law." *American Hardwoods, Inc.*, 885 F.2d 621, 625 (9th Cir.1989) *citing with approval In re Golden Plan of California, Inc.*, 829 F.2d 705, 713 (9th Cir.1986); *Johnson v. First National Bank of Montevideo, Minnesota*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Because the court viewed a permanent injunction of actions against the debtor's guarantors as being contradictory to the specific provisions of § 524(e), the court held that there was no power to issue such an injunction.

Nevertheless, the court left the door open for a contrary result if presented with facts similar to the *A.H. Robins* case. The court stated that even if it adopted the rationale of *A.H. Robins* it would have reached the same result because the facts of the *American Hardwoods* case were distinguishable. In so stating, the Ninth Circuit enumerated five factors which it viewed as critical to the *A.H. Robins* holding:

> "(1) the reorganization plan, which included the injunction, was approved by over 94% of the claimants ..., (2) the plan provided for full payment of creditors' claims, ...; (3) the injunction affected only about 1.5% of the claimants, ...; (4) it was

'essential' to the plan that claimants 'either resort to the source of funds for them in the Plan ... or not be permitted to interfere with the reorganization and thus with all other creditors,'; ...; and (5) 'the entire reorganization hing[ed] on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor.' ...''

*In re American Hardwoods, Inc.*, *supra* at 626.

Because this Court is presented with a request for a preliminary injunction, rather than permanent injunction, the focus of its analysis should be the fourth and fifth factors discussed above. In this case, it seems clear that these factors are satisfied. The assessment and levy of taxes for the specific purpose of repaying the obligations which are to be reorganized through this proceeding is nothing short of "essential" to this case, and the debtor's ability to successfully reorganize "hinges" on this dispute. Thus, this Court concludes that, absent a specific statutory prohibition against an injunction, this Court has both the jurisdiction and the general authority pursuant to § 105 to grant a preliminary injunction against the counties.

### III. There Are No Applicable Statutory Prohibitions Against the Injunction.

On this point, despite the efforts of the counties to convince this Court that its hands are tied by the 11th amendment and certain anti-injunction statutes, this Court is not persuaded.

#### A. The Eleventh Amendment does not apply to Counties.

 The counties have argued that the Eleventh Amendment prohibits the issuance of an injunction against a county. However, the Eleventh Amendment only applies to actions against the state, and a county is not considered a state. *Universal Surety Co. v. Lescher, Mahoney, Architects & Engineers*, 340 F.Supp. 303 (D.Ariz.1972); *Greater Los Angeles Council on Deafness v. Zolin*, 812 F.2d 1103 (9th Cir.1987). The counties have not distinguished this authority, nor have they successfully argued that it is erroneous.

More to the point is the Tenth Amendment, which reserves to the states those "powers not delegated to the United States by the Constitution...." The Constitution specifically granted, to Congress, the power to make laws relating to bankruptcies *U.S. Const.* art. I, § 8. Thus, federal law is superseding.

### B. *Ariz.Rev.Stat. § 42–204(B) Does Not Apply To This Court.*

■ The counties have also argued that an injunction is prohibited by *Ariz.Rev.Stat.* § 42–204(B). This Court follows the lead of the Ninth Circuit, which has concluded that this statute is inapplicable in federal court. *Standard Oil Co. v. Howe,* 257 F. 481, 487 (9th Cir.1919). Indeed, if this Court were to conclude that this statute prohibits it from enjoining the assessment and/or levy of taxes by a state, it might follow that 11 *U.S.C.* § 362 would also be considered inapplicable to any state action. Such a conclusion defies the basic concepts of federal preemption over state law and to so hold would turn the entire Bankruptcy Code on its head. Thus, this Court rejects this argument.

### C. *26 U.S.C. § 7421 Does Not Apply.*

■ The counties further argue that an injunction is prohibited by 26 U.S.C. § 7421. Again, this arguments are misplaced. 26 *U.S.C.* § 7421 prevents injunctions against the collection of *federal* taxes. The taxes or assessments involved here are *state or county* taxes. For this reason, the counties' reference to *American Bicycle Association,* 895 F.2d 1277 (9th Cir.1990) is of no assistance here. *American Bicycle* deals with collection of employment taxes against the principals of a corporate debtor. Employment taxes are federal obligations, unlike the taxes which are at issue here. Moreover, unlike the present case, in *American Bicycle* there was no showing that the collection of the employment taxes from nondebtors would adversely affect the reorganization. Thus, the authority is distinguishable. The debtor has also pointed out that the Ninth Circuit has already concluded that the anti-injunction provision contained in Title 26 is inapplicable to state taxes. *California State*

*Board of Equalization v. Goggin,* 191 F.2d 726 (9th Cir.1951), *cert. denied,* 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952).

### D. *28 U.S.C. § 1341 Does Not Prohibit The Injunction.*

■ Finally, the counties urge that a temporary injunction is prohibited by 28 *U.S.C.* § 1341. This is, perhaps, the most meritorious of all the counties' arguments. Yet, it too must fail. Section 1341 provides that:

> The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State.

28 *U.S.C.* § 1341. For purposes of this dispute, the gravamen of this provision is that it applies only when there is a plain, speedy, and efficient remedy in the court of the state. To this the Debtor argues that there is no such remedy because the tax will be levied against the individual farmers and landowners in its municipal irrigation district and, thus, the Debtor will have to rely upon the individual farmers to seek relief from the state courts. This situation, by its very nature, cannot be considered a speedy, effective nor efficient remedy. Indeed, there is no direct remedy available to the Debtor to accomplish the salutary aims of chapter 9, other than the overhaul of its debt structure through a confirmed plan of reorganization.

Moreover, there is no policy reason to extend the application of this statute to the present situation. The Debtor does not seek the injunction for purposes of avoiding the remedies afforded to taxpayers in the tax courts. To the contrary, the Debtor seeks the injunction for purposes of preserving its right to take full advantage of the reorganization provisions set forth in Chapter 9 of the Bankruptcy Code. Such a purpose does not offend the sensibilities of this Court, and indeed, is the intent of Congress. The Court is offended, however, by the possibility that the lack of an injunction may harm the basic purpose of this proceeding. This Court cannot ignore the fact that *Ariz.Rev.Stat.* § 48–3114(C) provides that "[w]hen a tax levied and assessed to meet an existing obligation is

in force, uncollected and unexpended, a reassessment or second levy for the same purpose shall not be made, whether or not the obligation is changed in form." This provision strongly suggests that if the tax is levied in its present form, it may not be altered in the future, even if the assessment is ultimately determined to be too high after the underlying debt is reorganized through this proceeding. In light of this, in order to preserve the integrity of the bankruptcy debt-adjustment process, this Court concludes that 28 *U.S.C.* § 1341 does not prohibit the requested injunction.

### IV. A Preliminary Injunction Is Appropriate Under These Circumstances.

 The critical issue, then, is whether a preliminary injunction is appropriate under the circumstances of this case. There are four factors to be considered:

1. the likelihood of plaintiff's success on the merits;
2. whether the injunction will save the plaintiff from irreparable injury;
3. whether the injunction would harm others; and
4. whether the public interest would be served by the injunction.

*In re Baldwin–United Corp.*, 57 B.R. 759, 766 (S.D.Ohio 1985).

With respect to the first factor, there is no question that the Debtor has the right to attempt to restructure its obligations, which may include a reduction of a debt's amount, and an alteration of its terms. This will impact on the amount of tax to be assessed. As for the second factor, an injunction will save the Debtor from potential irreparable harm. The Court was informed that the counties are recommending assessment of a tax which is nearly double that which has been assessed in the past.[2] There is absolutely no question that such an assessment will have a negative impact on the landowners in the district, imposing liens and affecting the farmers' ability to borrow against their land. That assessment is made only for the payment of obligations which may be restructured through chapter 9. The only

issue is whether the impact will be severe enough to make it difficult, if not impossible, for the taxing entity to collect the taxes necessary to service the Debtor's newly reorganized debt. This Court must also factor the provisions of *Ariz.Rev.Stat.* § 48–3114(C) into its analysis. It must also recognize that there is no immediate harm to the counties if they are enjoined from assessing a tax higher than that requested by the Debtor. Indeed, they are prohibited from collecting the tax, so the assessment is of little present benefit to the counties. However, adverse results affecting the reorganization could inure from the assessment, which therefore justifies a prohibition against an act which could undermine the purpose of Chapter 9. Therein lies the public policy which must be protected. Thus, the Court must issue an injunction.

### V. The Automatic Stay Applies to the Assessment of Taxes in a Chapter 9 Proceeding.

 The automatic stay provides an alternative basis for relief. Chapter 9 was enacted to allow an entity qualifying for municipality status to adjust its indebtedness through a plan of reorganization. Such indebtedness typically included bond-related debt which was paid from revenues generated from taxes imposed upon the municipality's citizenry. As succinctly stated in 4 *Collier on Bankruptcy*, ¶ 900.02 (15th Ed. 1994):

Thus, the purpose of municipal bankruptcy legislation must be directed toward a reorganization of its financial affairs, or, as the statutory title states "adjustment of its debts." The purpose of municipal bankruptcy legislation then is to permit a financially distressed public entity to seek protection from its creditors while it formulates and negotiates a plan for adjustment of its debts, either extending maturities, reducing interest or principal, or refinancing its debt by obtaining a new loan elsewhere to pay off existing debt, in whole or in part, and to provide the mechanism by which the plan that is acceptable to the majority of creditors can be made binding on a recalcitrant and dissenting minority. In its ultimate effect, municipal

---

**2.** This disclosure was made during the course of a hearing on August 10, 1994.

bankruptcy is much like corporate reorganization under chapter 11 of the Bankruptcy Code.

The history of municipal reorganization dates from the days of the Great Depression. *See Collier,* ¶ 900.01.

Interestingly, the legislative history of Chapter 9 indicates that it was intended for use in cases almost identical to the case at bar. During the 1920's, municipalities were unable to service their bond debt due to the impact of the Great Depression. In rural areas, the farmers in irrigation and drainage districts were unable to pay the real property taxes levied by, among others, water districts. The high taxes, in turn, led to tax foreclosures, which did not alleviate the financial problems of the taxing authorities, because there were no buyers for the land. The debt spiral escalated. *See Collier on Bankruptcy,* ¶ 900.01 (15th Ed. 1994). This is the precise problem in this case.

Against this historical backdrop, chapter 9 and its legislative predecessors were enacted. In its current form, chapter 9 provides this debtor with an alternative basis for relief—which exists by operation of law, and no request need be made by a debtor in order to be shaded by its protective umbrella.

The automatic stay of 11 *U.S.C.* § 362 applies to chapter 9 proceedings. § 103(e); § 901. Section 362 provides, in pertinent part, that the filing of a bankruptcy petition, "operates as a stay," applicable to all entities of—

(1) the commencement ... of ... [any] action or proceeding against the debtor ... to recover a claim against the debtor ...

&ast; &ast; &ast; &ast; &ast; &ast;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title.

11 *U.S.C.* § 362(a). There is no question but that the tax seeks to collect and pay upon a debt owed by the Debtor to its creditors. Such action is barred.

In addition, § 922 augments the § 362 stay and further refines and shapes it

for use within the context of a chapter 9 proceeding. Section 922 provides a stay against:

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against an officer *or inhabitant of the debtor that seeks to enforce a claim against the debtor;* and

(2) the enforcement of a lien on or arising out of taxes or assessments owed to the debtor. (emphasis added)

11 *U.S.C.* § 922(a). The automatic stay is fundamental to a bankruptcy proceeding because it halts all collection efforts and allows a municipal debtor to attempt to formulate a plan of reorganization. It also prevents any creditor from obtaining an advantage over any other creditor.

These provisions work together, in a chapter 9, to prohibit the assessment of a tax without obtaining stay relief. The tax assessment contemplated by the counties violates § 362 as it would result in the recovery of a claim owed by the Debtor. It violates § 922 as it would result in the counties taking action against an inhabitant of the Debtor to enforce a claim against the Debtor. Accordingly, this Court concludes that the counties are barred by the automatic stay from assessing or levying any tax against the farmers, which tax is solely for the purpose of paying upon pre-petition indebtedness.

In light of this, the Court has no reservation in concluding that the stay was intended to apply to the type of assessment sought here. The Court concludes, however, that it is appropriate that some assessment be made because it will, in fact, advance the interests of the Debtor, provided that such assessment will not adversely impact the Debtor's attempts to reorganize. Indeed, maintaining a stream of income consistent with the Debtor's requested budget, will facilitate this reorganization. The assessment recommended by the Debtor, in the approximate amount of $21.3901 per acre, which is consistent with historical assessments, is an appropriate amount. Accordingly, this Court will modify the automatic stay to allow the assessment of taxes in an amount no greater than that

proposed by the Debtor in its current budget.

### *RULING*

The Debtor's motion for Preliminary Injunction, pursuant to *Fed.R.Civ.P.* 65 and *Fed.R.Bankr.P.* 7065, is partially granted, to and through Plan Confirmation. During this period, Pinal and Maricopa Counties may not assess the landowners within the Debtor's irrigation and drainage district any amount greater than requested in the Debtor's current or any new amended budgets.

The Counties' Motions to Dismiss or Abstain are denied.

The automatic stay of 11 *U.S.C.* § 362(a) and § 922 apply to this proceeding. However, such stays are modified as set forth above.

The Debtor is ordered to file its Plan of Reorganization on or before November 1, 1994.

The Debtor's Motion for "Declaratory Relief" is denied, without prejudice, in favor of the conventional application of summary judgment procedure pursuant to *Fed. R.Civ.P.* 56, and *Fed.R.Bankr.P.* 7056, giving all parties a reasonable and prescribed period for response and presentation of fully-briefed positions on the issues.