In re BEST RECEPTION SYSTEMS, INC., Debtor.

BENEFICIAL NATIONAL BANK USA, Plaintiff,

v.

BEST RECEPTIONS SYSTEMS, INC., Defendants (5 Cases).

Geneva JOHNSON, Joel Stephenson, Plaintiffs,

v.

RICKLES ELECTRONICS & SATELLITES, et al., Defendants.

Donald HICKS, et al., Plaintiffs,

v.

SKY–LINK CABLE, INC., et al., Defendants.

Sykes POTTER, Plaintiff,

v.

STAR VISION, INC., Defendant.

Mary WILLIAMS, et al., Plaintiffs,

v.

Maurice STINSON, et al., Defendants.

Robert BLAYLOCK, Plaintiff,

v.

STAR VIEW WIRELESS CABLE, INC., Defendants.

Angela R. SMITH, Plaintiff,

v.

C.A.M.P. UNLIMITED, INC., et al., Defendants.

James ANDERSON, Plaintiff,

v.

BENEFICIAL NATIONAL BANK USA, Defendant/Third Party Plaintiff.

Michael COAKER, et al., Plaintiffs,

v.

GULF COAST ELECTRONICS, Defendant.

Timmy HOLIFIELD, Plaintiff,

v.

GULF COAST ELECTRONICS, et al., Defendants.

Jery COAKER, Plaintiff,

v.

GULF COAST ELECTRONICS,
Defendant.

Doris MOBLEY, Plaintiff,

v.

CABLE UNLIMITED, et al., Defendants.

Mary CAMPBELL, Plaintiff,

v.

CABLE VIEW, INC., Defendant.

Dorothy PORTIS, Plaintiff,

v.

CABLEVIEW, INC., et al., Defendants.

Aestean YOUNG, et al., Plaintiffs,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Wayne DILLARD, Plaintiff,

v.

HOME CABLE CONCEPTS,
INC., et al., Defendants.

Len ANDERSON, Plaintiff,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Judith M. EDWARDS, Plaintiff,

v.

STAR VIDEO SYSTEMS, INC.,
et al., Defendants.

Patricia Moss MAHONE, Plaintiff,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Willie George McCALL, Plaintiff,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

Duffie GOLDSMITH, Plaintiff,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

Robert L. BATTLE, Plaintiff,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Moses L. SMITH, Plaintiff,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Roosevelt McCALL, et al., Plaintiffs,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

James MERRIWETHER,
et al., Plaintiffs,

v.

CABLE CONCEPTS, INC.,
et al., Defendants.

Mae B. STEWART, Plaintiff,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

Starling BROWN, Plaintiff,

v.

HOME CABLE CONCEPTS, Defendant.

Jessie M. STINSON, Plaintiff,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Ivy HOWARD, et al., Plaintiffs,

v.

BEST RECEPTION SYSTEMS,
INC., et al., Defendants.

Clarence E. WHEELER, Plaintiff,

v.

HOME CABLE CONCEPTS, Defendant.

Oscar PENN, Plaintiff,

v.

Pearl GAUNTT, et al., Defendants.

Horace JOHNSON, Plaintiff,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

Steven H. FISHER, Plaintiff,

v.

ALABAMA CABLEVISION,
INC., Defendant.

Gary TIDWELL, Plaintiff,

v.

BEST RECEPTION SYSTEMS, INC.,
Sky–Line Cable, Defendants.

Keith CALDWELL, et al., Plaintiffs,

v.

HOME CABLE CONCEPTS
OF TENNESSEE, INC.,
et al., Defendants.

Christopher B. SEALE, Plaintiff,

v.

HOME CABLE CONCEPTS,
INC., Defendant.

Alice THREATT, et al., Plaintiffs,

v.

COMBINED CABLE SYSTEMS,
INC., et al., Defendants.

Ian RICHARDS, Plaintiff,

v.

HOME VIDEO ELECTRONICS,
INC., Defendant.

Preston BALLARD, et al., Plaintiffs,

v.

GULF COAST ELECTRONICS,
INC., et al., Defendants.

Eddie CUSTARD, et al., Plaintiffs,

v.

HOME CABLE CONCEPTS
OF TENNESSEE, INC.,
et al., Defendants.

Ethel FIKES, et al., Plaintiffs,

v.

HOME CABLE CONCEPTS
OF TENNESSEE, INC.,
et al., Defendants.

HOME CABLE CONCEPTS
OF TENNESSEE, INC.,
et al., Plaintiffs,

v.

HOUSEHOLD RETAIL SERVICES,
INC., Defendant/Third Party
Plaintiff.

Elaine Hackman SMITH, Plaintiff,

v.

RTO CABLE SYSTEMS, INC.,
et al., Defendants.

Larue PERRYMAN, Plaintiff,

v.

SATELLITE CONNECTIONS,
INC., et al., Defendants.

Howard ESCO, Plaintiff,

v.

C.A.M.P. UNLIMITED, INC.,
et al., Defendants.

James J. DAVIS, Plaintiff,

v.

The SOURCE CARD, et al., Defendants.

Gladys FREEMAN, Plaintiff,

v.

H & H CABLE SYSTEMS, INC.,
et al., Defendants.

Jimmy JACKSON, et al., Plaintiffs,

v.

C.A.M.P. CABLE CONCEPTS,
INC., et al., Defendants.

Julius LANIER, Plaintiff,

v.

SPS TRANSACTION SERVICES,
INC., et al., Defendants.

Ethel JENKINS, et al., Plaintiffs,

v.

**HURLEY STATE BANK,**
Defendant/Third Party
Plaintiff.

Bankruptcy No. 97–31372.

Adversary Nos. 97–3051, 97–3106 to 97–3109, 97–3113, 97–3123, 97–3132, 97–3170, 97–3178, 97–3181, 97–3199, 97–3144 to 97–3166, 97–3168, 97–3182, 97–3202, 97–3210 to 97–3212, 97–3232, 97–3241, 97–3252, 98–3006 to 98–3008, 97–3111, 97–3133, 97–3135, 97–3136, 97–3185, 97–3231, 97–3258.

United States Bankruptcy Court,
E.D. Tennessee.

March 5, 1998.

See Also: 219 B.R. 980.

Memory & Gilliland, L.L.C., Von G. Memory, Montgomery, AL, Jenkins & Jenkins, Michael H. Fitzpatrick, Knoxville, TN, for Plaintiffs in Adversary Proceeding Nos. 97–3135, 97–3136, 97–3146, 97–3150, 97–3151, 97–3153, and 97–3165.

King, Ivey & Warren, Barry A. Ragsdale, Birmingham, AL, for Plaintiffs in Adversary Proceeding Nos. 97–3123, 97–3162, 97–3185, 97–3202, 97–3241, 98–3006, 98–3007, and 98–3008.

Azar & Azar, George B. Azar, Montgomery, AL, for Plaintiffs in Adversary Proceeding Nos. 97–3164, 97–3168, and 97–3199.

Jackson, Taylor & Martino, P.C., Scott E. Denson, Mobile, AL, Gordon Ball, Knoxville, TN, for Plaintiffs in Adversary Proceeding No. 97–3149.

Parker & Mooty, P.C., Edward B. Parker, II, Montgomery, AL, for Plaintiffs in Adversary Proceeding Nos. 97–3133, 97–3155, 97–3157, 97–3158, 97–3161, and 97–3163.

Ted L. Mann, P.C., Ted L. Mann, Birmingham, AL, for Plaintiffs in Adversary Proceeding Nos. 97–3154 and 97–3181.

Hardin & Hawkins, Jeffrey G. Blackwell, Birmingham, AL, for Plaintiffs in Adversary Proceeding Nos. 97–3156 and 97–3159.

Charles H. Morris, III, Selma, AL, for Plaintiffs in Adversary Proceeding No. 97–3231.

Neal H. Howard, Atlanta, GA, for Plaintiff in Adversary Proceeding No. 97–3252.

Roger K. Futson, Birmingham, AL, John M. Gibbs, Demopolis, AL, for Plaintiff in Adversary Proceeding No. 97–3258.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, TN, Ballard, Spahr, Andrews & Ingersoll, Vincent Marriot, III, Philadelphia, PA, for Beneficial National Bank USA.

Walker & Walker, P.C., John A. Walker, Jr., Knoxville, TN, Sirote & Permutt, Stephen B. Porterfield, Wilson F. Green, Birmingham, AL, for Hurley State Bank.

Bradley, Arant, Rose & White, Patrick Darby, Andrew J. Noble, Birmingham, AL, Baker, Donelson, Bearman & Caldwell, Richard B. Gossett, Nelwyn Inman, Knoxville, TN, for Household Retail Services, Inc.

Sasser & Walker, P.C., James T. Sasser, Rebecca A. Walker, Gadsden, AL, for Rickles Electronics & Satellites.

Kramer, Rayson, Leake, Rodgers & Morgan, Thomas M. Hale, Knoxville, TN, for Home Cable Concepts, Inc., Sonny Allen, Cecil Williams, Kevin Boyer, Gary Ganster, Max Billings, Emily Tallent and Webber Phavis.

Frantz, McConnell & Seymour, L.L.P., Michael W. Ewell, Knoxville, TN, for SuperStar Satellite Entertainment, Inc.

Carpenter & O'Connor, J. Gregory O'Connor, Knoxville, TN, for Cable Alternatives, Inc., Ray Ogle, John Coe, and Susan Ogle.

Johnny Hardwick, Montgomery, AL, for Camp Cable Concepts, Inc., Camp Unlimited, Inc., Leon C. Allen, Shirley Allen, Maurice Stinson, and Carl Hamilton.

Hodges, Doughty & Carson, Dean B. Farmer, Knoxville, TN, Weems & House, Kyle R. Weems, Chattanooga, TN, for Best Reception Systems, Inc.

## MEMORANDUM ON JOINT MOTION TO ALTER OR AMEND JUDGMENT FILED BY DEFENDANTS BENEFICIAL NATIONAL BANK USA and HURLEY STATE BANK and PLAINTIFFS' MOTIONS FOR ABSTENTION AND/OR REMAND

RICHARD. S. STAIR, Jr., Chief Judge.

All but one of the fifty-four adversary proceedings identified in the caption of this memorandum were transferred to this court from various bankruptcy courts in Alabama.[1] These fifty-three actions were initially commenced in an Alabama state circuit court and thereafter removed to an Alabama bankruptcy court pursuant to 28 U.S.C.A. § 1452(a) (West 1994).[2] Thirteen of these actions were removed by a defendant, Beneficial National Bank USA (Beneficial); thirty-three were removed by a defendant, Household Retail Services, Inc. (Household); and eight were removed by a defendant, Hurley State Bank (Hurley).[3] Beneficial, Household, and Hurley are not joined as co-defendants in any adversary proceeding but are named, individually, as defendants only in those adversary proceedings which each removed. The Debtor is named as an original party defendant and cross-defendant or as a third party defendant in all but four of the adversaries: 97–3252, 98–3006, 98–3007, and 98–3008. The court has not consolidated the adversary proceedings for trial but is utilizing a consolidated caption solely to facilitate the entry of orders dealing with common pretrial issues.

On September 25, 1997, the court held a joint scheduling conference in all adversary proceedings pending at that time. At the scheduling conference, the court, on its own motion, determined that each of the removed adversary proceedings was non-core but related to the Debtor's Chapter 11 case. Specifically, the Order emanating from the September 25, 1997 scheduling conference,

---

1. Adversary Proceeding No. 97–3252 was transferred from the United States Bankruptcy Court for the Northern District of Georgia.

2. Adversary Proceeding No. 97–3252 was commenced in the State Court of Fulton County, Georgia, and removed to the Georgia bankruptcy court pursuant to § 1452.

3. Eighty other actions transferred to this court have been dismissed or consolidated and are therefore not included in this memorandum. Two additional actions that are still pending, Adversary Proceeding Nos. 97–3062 and 97–3142, are not included in this memorandum and will be dealt with separately.

entered on September 30, 1997, recites in material part:[4]

10. Pursuant to 28 U.S.C. § 157(b)(3), the court, on its own motion, has determined that each of the above adversary proceedings is a non-core proceeding that is otherwise related to the Debtor's case under title 11. As such, these adversary proceedings may be heard by the bankruptcy judge pursuant to 28 U.S.C. § 157(c).

11. Pursuant to Fed.R.Bankr.P. 9027(a)(1) and 9027(e)(3), the parties filing the notices of removal, Beneficial National Bank USA, Household Retail Services, and Hurley State Bank, and all other parties to the removed actions shall, by October 31, 1997, file in each adversary proceeding in which the filing entity is a party a notice that the party does or does not consent to the entry of final orders and judgments by the bankruptcy judge pursuant to 28 U.S.C. § 157(c)(2).

On October 10, 1997, Beneficial and Hurley filed a Joint Motion to Alter or Amend Judgment (Joint Motion). The Joint Motion is supported by a Brief in Support of Joint Motion to Alter or Amend filed the same date. By their Joint Motion, Beneficial and Hurley ask the court to alter or amend paragraph 10 of the September 30, 1997 scheduling Order

to the extent that it determines that each of the adversary proceedings is a non-core proceeding, by deleting that determination and holding that each is a core proceeding, or, in the alternative, by deleting that determination and holding that the core/non-core issue be determined separately as to each adversary proceeding.

The court, by an Order entered on October 15, 1997, directed that it would defer ruling on the Joint Motion to give Beneficial, Hurley, and any other party desiring to do so, an opportunity to brief the core/non-core issue. To that end, the court directed the filing of briefs by November 14, 1997. On November 12, 1997, C.A.M.P. Cable Concepts, Inc., C.A.M.P. Unlimited, Inc., Leon C. Allen, Shirley Allen, Maurice Stinson, and Carl Hamilton filed a Motion to Adopt Joint Motion to Alter or Amend Judgment and Brief in Support of Joint Motion to Alter or Amend (Motion to Adopt Joint Motion) in nine adversary proceedings.[5] Of the nine adversary proceedings in which the Motion to Adopt Joint Motion was filed, six, Nos. 97–3157, 97–3158, 97–3161, 97–3162, 97–3163, and 97–3165, are actions which were removed by Household. On November 12, 1997, the court granted the Motion to Adopt Joint Motion and authorized the six defendants who filed that motion to join the Joint Motion. On November 17, 1997, Beneficial and Hurley supplemented their original memorandum with the filing of a Memorandum of Law of Beneficial National Bank USA and Hurley State Bank in Support of Joint Motion to Alter or Amend Judgment.[6] Finally, on November 14, 1997, Household, in support of the Joint Motion filed by Beneficial and Hurley, filed a Memorandum of Law in Support of Determination That Proceedings are Core Proceedings. Notwithstanding the fact that Household is not a party to the Joint Motion, the court will review its September 30, 1997 determination of the core/non-core issue in each of the pending adversaries to which Household is a party as opposed to only those six adversary proceedings removed by it which are subject to the Joint

---

4. On September 25, 1997, there were ninety-six pending adversary proceedings. Five adversaries, Nos. 97–3110, 97–3111, 97–3112, 97–3199 and 97–3202, were not pending on September 25, 1997, but were nonetheless made subject to the September 30, 1997 Order. Scheduling conferences were held in three other adversaries on January 13, 1998. Scheduling conferences have been held in all but five of the adversary proceedings dealt with in this memorandum: Nos. 97–3252, 97–3258, 98–3006, 98–3007, and 98–3008.

5. The Motion to Adopt Joint Motion was actually filed in twenty-five adversary proceedings. How-

ever, sixteen of these adversaries have been dismissed.

6. Beneficial and Hurley erroneously filed this memorandum in the Debtor's case on November 12, 1997. The court, pursuant to an Order entered on November 14, 1997, directed that the memorandum be stricken and refiled in the adversary proceedings in which the Joint Motion had application. The court extended the time for Beneficial and Hurley to properly file the memorandum through November 18, 1997.

Motion pursuant to the court's November 12, 1997 Order granting the Motion to Adopt Joint Motion filed by C.A.M.P. Cable Concepts, Inc., C.A.M.P. Unlimited, Inc., Leon C. Allen, Shirley Allen, Maurice Stinson, and Carl Hamilton.

In addition to the Joint Motion, the court also has before it thirty-two motions for abstention and/or remand filed by the plaintiffs in Adversary Proceeding Nos. 97–3113, 97–3123, 97–3133, 97–3135, 97–3136, 97–3144, 97–3146, 97–3150, 97–3151, 97–3153, 97–3154, 97–3155, 97–3156, 97–3157, 97–3158, 97–3159, 97–3160, 97–3161, 97–3162, 97–3163, 97–3164, 97–3165, 97–3166, 97–3168, 97–3181, 97–3185, 97–3202, 97–3210, 97–3211, 97–3212, 97–3252, and 97–3258.[7] By their abstention and/or remand motions, the plaintiffs move the court to abstain from hearing these adversary proceedings and/or remand them back to the respective state courts in which they were commenced. Beneficial and Household have filed objections to these motions in each of the adversary proceedings in which they are named as a defendant.[8] Hurley, a defendant in six of the adversary proceedings in which a motion for abstention and/or remand has been filed, has filed an objection to these motions in only four of these adversary proceedings: Adversary Proceeding Nos. 97–3133, 97–3135, 97–3136, and 97–3154.[9] Plaintiffs in fourteen of the adversary proceedings have briefed the abstention and/or remand

issue.[10] Beneficial, Household, and Hurley, on November 20, 1997, each filed individual briefs in opposition to the motions for abstention and/or remand. On January 13, 1998, the court heard oral argument on all abstention and/or remand motions pending in all adversaries subject to the September 30, 1997 scheduling Order.

## I

The following summary represents a simplified generalization of the facts giving rise to each of these adversary proceedings. This summary does not constitute a finding of facts established by an evidentiary hearing but is determined from a review of the pleadings filed in the various adversary proceedings, which contain substantially the same allegations and are grounded on substantially the same legal theories.

The Debtor, Best Reception Systems, Inc., engaged in the sale and distribution of "C-band" satellite equipment for the receipt of satellite television signals. For the purpose of marketing its goods, the Debtor entered into dealer agreements with various retailers of satellite dish equipment. Pursuant to the dealer agreements, these retailers served as authorized dealers of the Debtor's "C-band" satellite equipment. To facilitate the financing of purchases from its authorized dealers, the Debtor entered into three separate

---

7. The court refers to these motions as motions for "abstention and/or remand" because most, but not all, of the motions request both remedies. Motions for remand only have been filed in the following seven proceedings: Adversary Proceeding Nos. 97–3133, 97–3155, 97–3157, 97–3158, 97–3161, 97–3163, and 97–3252.

8. Household elected to take the "shotgun" approach, filing objections in nearly every adversary proceeding in which an abstention and/or remand motion was filed, even though it is not a party to each of these adversary proceedings. To the extent that Household has filed an objection in adversary proceedings to which it is not a party in interest, its objection will not be considered.

9. Hurley has not objected to the abstention and/or remand motions in Adversary Proceeding Nos. 97–3185 and 97–3258. Eastern D. Tenn. LBR 7007–1 provides:

A motion filed in a proceeding shall be accompanied by a brief setting forth the facts and the

law supporting the motion. Unless the court directs otherwise, the opposing party shall respond within twenty days after the date of filing of the motion. Any opposing response shall be supported by a brief setting forth the facts and the law in opposition to the motion. A failure to respond shall be construed by the court to mean that the respondent does not oppose the relief requested by the motion. After the time for response has expired, the court may rule on the motion without a hearing. A party may request a hearing.

Although the failure to respond within twenty days is construed to mean that there is no opposition to the relief sought in the applicable abstention and/or remand motions, the court will nevertheless address the merits of these motions along with the others pending before the court.

10. Specifically, briefs have been filed by plaintiffs in Adversary Proceeding Nos. 97–3123, 97–3146, 97–3150, 97–3151, 97–3153, 97–3154, 97–3160, 97–3162, 97–3165, 97–3181, 97–3185, 97–3202, 97–3211, and 97–3252.

agreements with Beneficial, Household, and Hurley, each individually, whereby the latter parties agreed to finance all purchases made by qualified customers of the Debtor's authorized dealers. By the terms of the agreements between the Debtor and Beneficial, Household, or Hurley, the Debtor agreed to indemnify Beneficial, Household, and Hurley from any claims asserted against these parties as a result of the misconduct of any of the Debtor's authorized dealers in conjunction with the purchases that Beneficial, Household, and Hurley financed.

Following the sale and financing of the Debtor's satellite equipment in accordance with the arrangements established by the Debtor, numerous lawsuits were filed in the state courts of Alabama by purchasers of the equipment against, among other parties, the dealerships and individual salespersons who sold the equipment to them, and the entity that financed the purchase, being either Beneficial, Household, or Hurley.[11] The actions, many of which seek both compensatory and punitive damages, allege, among other things, that the defendants misrepresented the terms of the sales, and more specifically, the terms of the financing.[12] In some of the actions, but not all, the Debtor is named as a defendant. In such instances, the named

defendant that financed the purchase, being either Beneficial, Household, or Hurley, filed a cross-claim against the Debtor for indemnification pursuant to the agreement between the two parties concerning the financing of the satellite equipment. In all but four of those actions where the Debtor is not named as a defendant, third party complaints have been filed against the Debtor by either Beneficial, Household, or Hurley, also seeking indemnification pursuant to contract.[13] Specifically, the cross-claims and third party claims allege that misconduct on the part of an authorized dealer or its representative gave rise to the claims against Beneficial, Household, or Hurley, thereby effectuating the Debtor's obligation of indemnification.[14] The Debtor denies that Beneficial, Household, and Hurley are entitled to indemnification.

## II

■ Because the core/non-core issue is subsumed by the abstention issue, the court will first consider the pending motions for abstention.[15] The determination of whether to abstain is a core proceeding, pursuant to 28 U.S.C.A. § 157(b)(2)(A) (West 1993), in which this court may enter a final order. *In re Finkley*, 203 B.R. 95, 97 (Bankr.N.D.Ill. 1996).[16]

---

11. One of the lawsuits before the court was commenced in a Georgia state court. *See supra* note 2.

12. Several of the actions include additional claims such as, but not limited to, negligence, conspiracy, suppression, deceit, and wanton and negligent hiring, training, and supervision.

13. No action has been taken against the Debtor in Adversary Nos. 97–3252, 98–3006, 98–3007, and 98–3008. Household is the named defendant that financed the purchases in these actions. Hurley, in Adversary No. 97–3154, filed a Motion for Leave to Amend to Assert Third Party Claim Against Best Reception Systems, Inc., on June 24, 1997, while the adversary proceeding was pending in the United States Bankruptcy Court for the Middle District of Alabama. The motion was granted by this court on January 16, 1998. Hurley, however, has yet to file its third party complaint. The court nevertheless deems the proposed third party complaint, attached as an exhibit to Hurley's June 24, 1997 motion, to be filed in the adversary proceeding. Accordingly, a third party action is pending against the Debtor in Adversary No. 97–3154.

14. Five of the third party actions initiated by Beneficial are before the court wholly separate from the related underlying action against Beneficial. Beneficial removed these actions, Adversary Proceeding Nos. 97–3051, 97–3106, 97–3107, 97–3108, and 97–3109, separate from the underlying actions because they were severed from the main action by the state court prior to their removal.

15. There are twenty-five abstention motions before the court. Abstention motions have been filed in Adversary Proceeding Nos. 97–3113, 97–3123, 97–3135, 97–3136, 97–3144, 97–3146, 97–3150, 97–3151, 97–3153, 97–3154, 97–3156, 97–3159, 97–3160, 97–3162, 97–3164, 97–3165, 97–3166, 97–3168, 97–3181, 97–3185, 97–3202, 97–3210, 97–3211, 97–3212, and 97–3258.

16. An evidentiary hearing on the abstention and/or remand motions has been requested by the plaintiffs in Adversary Proceeding Nos. 97–3132, 97–3135, 97–3136, 97–3144, 97–3146, 97–3150, 97–3151, 97–3153, 97–3160, 97–3165, and 97–3211 pursuant to a Motion for Evidentiary Hearing filed in these adversary proceedings on January 30, 1998. This memorandum is dispositive of these motions.

The law of abstention is set forth in 28 U.S.C.A. § 1334(c) (West Supp.1997), which provides:

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Subsection (c)(1) addresses those situations when courts may abstain from hearing a proceeding while subsection (c)(2) defines those situations when courts must abstain from hearing a proceeding. The former is known as permissive abstention while the latter is referred to as mandatory abstention.

### A. Mandatory Abstention

■ The Sixth Circuit recently discussed the requirements of mandatory abstention in *Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.)*, 113 F.3d 565 (6th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 435, 139 L.Ed.2d 334 (1997).

[F]or mandatory abstention to apply to a particular proceeding, there must be a timely motion by a party to that proceeding, and the proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.

*Id.* at 570. Because abstention motions have been filed in only twenty-five of the pending adversary proceedings, mandatory abstention is inapplicable to the remaining adversary proceedings in which no abstention motion has been filed. As to the twenty-five adversary proceedings in which a motion to abstain has been filed, the threshold issue regarding mandatory abstention is whether core or non-core proceedings are at issue.

### Core or Non-Core Proceeding

A complete analysis of the core/non-core issue must begin with the Supreme Court decision of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), a case in which the Supreme Court concluded that the delegation of Article III powers to non-tenured bankruptcy judges by the Bankruptcy Reform Act of 1978 was unconstitutional. In response to *Marathon,* the legislature drafted the Bankruptcy Amendments and Federal Judgeship Act of 1984, which enacted the present day statutory scheme set forth in 28 U.S.C.A. §§ 1334 and 157. Under the current legislation, the extent of the district courts' jurisdiction over bankruptcy matters is governed by 28 U.S.C.A. § 1334(a)–(b) (West 1993), which provide:

(a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Section 1334 grants jurisdiction to the district courts over four types of bankruptcy matters: (1) "cases under title 11"; (2) "proceedings arising under title 11;" (3) "proceedings . . . arising in . . . cases under title 11"; and (4) "proceedings . . . related to cases under title 11." The first category refers to the bankruptcy case itself, initiated by filing a petition under 11 U.S.C.A. §§ 301, 302, or 303 (West 1993 & Supp.1997). *Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *Wood v. Wood (In re*

*Wood),* 825 F.2d 90, 92 (5th Cir.1987). The second, third, and fourth categories "operate conjunctively to define the scope of jurisdiction." *Wolverine Radio Co.,* 930 F.2d at 1141. Therefore, district courts have jurisdiction over bankruptcy proceedings so long as they are at least "related to" a case under title 11.

If a district court has jurisdiction under § 1334, then 28 U.S.C.A. § 157 (West 1993 & Supp.1997) operates to define the authority of bankruptcy courts over such matters. Under § 157, bankruptcy courts have not been granted the full extent of the judicial power that district courts possess under § 1334. *Wolverine Radio Co.,* 930 F.2d at 1143–44. Specifically, 28 U.S.C.A. § 157(b)(1) (West 1993) provides:

> Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

Except for the bankruptcy case itself, bankruptcy courts may enter final orders and judgments in only two types of proceedings: "all core proceedings arising under title 11, or arising in a case under title 11." *Wood,* 825 F.2d at 95.

In its analysis of the meaning of the phrase "core proceedings," the Fifth Circuit has stated:

> The meaning of core proceedings is illuminated ... by the textual context in which it appears. Subsection 157(b)(1) vests full judicial power in bankruptcy courts over "core proceedings *arising under title 11, or arising in a case under title 11.*" The prepositional qualifications of core proceedings are taken from two of the three categories of jurisdiction set forth in section 1334(b): proceedings "arising under" title 11, "arising in" title 11 cases, and "related to" title 11 cases. Although the purpose of this language in section 1334(b) is to define conjunctively the scope of jurisdiction, each category has a distinguishable meaning. These meanings become relevant because section 157 apparently

equates core proceedings with the categories of "arising under" and "arising in" proceedings.

*Id.* at 96. The Fifth Circuit described the phrase "arising under title 11" as "those proceedings that involve a cause of action created or determined by a statutory provision of title 11." *Id.* As to the second category of core proceedings, those "arising in a case under title 11," the court stated:

> The meaning of "arising in" proceedings is less clear, but seems to be a reference to those "administrative" matters that arise *only* in bankruptcy cases. In other words, "arising in" proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy.

*Id.* at 97 (footnote omitted). Although the term "core proceeding" is not defined by statute, a non-exclusive list of core proceedings is set forth in 28 U.S.C.A. § 157(b)(2) (West 1993), which provides:

> Core proceedings include, but are not limited to—
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;
>
> (F) proceedings to determine, avoid, or recover preferences;
>
> (G) motions to terminate, annul, or modify the automatic stay;
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> (I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

A proceeding that neither arises under title 11 nor arises in a case under title 11 is non-core. A bankruptcy judge may nonetheless hear the proceeding if it "is otherwise related to a case under title 11." 28 U.S.C.A. § 157(c)(1) (West 1993); *see Wood,* 825 F.2d at 97. In *Robinson v. Michigan Consolidated Gas Co.,* 918 F.2d 579 (6th Cir.1990), the Sixth Circuit adopted the test for relatedness as set forth in *Pacor, Inc. v. Higgins (In re Pacor, Inc.),* 743 F.2d 984 (3d Cir.1984):

"The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of [that] proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."

*Robinson,* 918 F.2d at 583 (quoting *Pacor, Inc.,* 743 F.2d at 994) (citations omitted). To this test, the Sixth Circuit has added "the caveat that 'situations may arise where an extremely tenuous connection to the estate would not satisfy the jurisdictional requirement.'" *Robinson,* 918 F.2d at 584 (quoting *Kelley v. Nodine (In re Salem Mortgage Co.),* 783 F.2d 626, 634 (6th Cir.1986)); accord *Lindsey v. O'Brien, Tanksi, Tanzer and Young Health Care Providers (In re Dow Corning Corp.),* 86 F.3d 482, 489 (6th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 718, 136 L.Ed.2d 636 (1997).

The Supreme Court, in *Celotex Corp. v. Edwards,* 514 U.S. 300, 307–09, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995), has noted that the "related to" jurisdiction of a bankruptcy court is "comprehensive" but not "limitless." It does extend to suits between non-debtor parties, but only if the action has "an effect on the bankruptcy estate." *Id.* at 308 n. 5, 115 S.Ct. at 1499 n. 5. There must be some nexus between the action and the debtor's bankruptcy case. *Dow Corning Corp.,* 86 F.3d at 489. The existence of common questions of fact alone is insufficient to give rise to "related to" jurisdiction. *Id.*

If a non-core proceeding is not related to a case under title 11, then the bankruptcy court lacks subject matter jurisdiction over the proceeding. *See Celotex Corp.,* 514 U.S. at 304, 115 S.Ct. at 1498 ("[T]he Bankruptcy Court's jurisdiction to enjoin respondents' proceeding against Northbrook must be based on the 'arising under,' 'arising in,' or 'related to' language of §§ 1334(b) and 157(a)."); *Gallucci v. Grant (In re Gallucci),* 931 F.2d 738, 741 (11th Cir.1991) ("[B]ankruptcy courts by statute ... may not entertain cases involving noncore, unrelated matters.").

The parties to the Joint Motion and Household contend that all of the pending adversary proceedings are core proceedings under the authority of 28 U.S.C.A. § 157(b)(2)(B). Specifically, they argue that the actions asserted by Beneficial, Household, and Hurley against the Debtor, whether by cross-claim or third party claim, based upon their alleged indemnity rights involve the resolution of claims necessary to the administration of the Debtor's estate. The court agrees that where a party has filed a proof of claim in a debtor's case, any action asserted by that party against the debtor that raises the same issues as those encompassed by the proof of claim is a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B). *See Benedor Corp. v. Conejo*

*Enters., Inc. (In re Conejo Enters., Inc.)*, 96 F.3d 346, 353 (9th Cir.1996); *S.G. Phillips Constructors, Inc. v. Burlington (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 704–06 (2d Cir.1995); *Southeastern Sprinkler Co., Inc. v. Meyertech Corp. (In re Meyertech Corp.)*, 831 F.2d 410, 415–18 (3d Cir. 1987); *Wood*, 825 F.2d at 97–98; *Steinman v. Spencer (In re Argus Group 1700, Inc.)*, 206 B.R. 737, 747–48 (Bankr.E.D.Pa.1996), *aff'd*, 206 B.R. 757 (E.D.Pa.1997). Beneficial, Household, and Hurley have each filed a proof of claim in the Debtor's case.[17] Each of these claims is founded upon the alleged indemnity rights that serve as the basis for the cross-claims and third party actions against the Debtor. Accordingly, the cross-claims and third party suits asserted by Beneficial, Household, and Hurley are core proceedings under the authority of 28 U.S.C.A. § 157(b)(2)(B). However, this conclusion does not dispose of the core/non-core issue.

■ The fact that Beneficial, Household, and Hurley have initiated core proceedings by virtue of their cross-claims and third party actions does not necessarily mean that the remaining issues raised in these adversary proceedings are core proceedings as well. Illustrative of this point is the case of *Ralls v. Docktor Pet Centers, Inc.*, 177 B.R. 420 (D.Mass.1995). *Ralls* involved a debtor's motion to reject certain franchise agreements. Additionally, the debtor's motion sought the recovery of money damages from the franchisees for unpaid royalties and accounts receivable. The bankruptcy court granted the motion to reject the franchise agreements and awarded the debtor money damages for the unpaid royalties and receivables. The franchisees appealed, arguing, among other things, that the bankruptcy court did not have the authority to enter a final order on the issue of money damages because the issue was not a core proceeding. They did not dispute the core nature of the motion to reject the franchise agreements, but only the nature of the action for money damages.

The district court agreed with the franchisees, holding that the issue of money damages was a non-core but related matter. *Id.* at 427. While it is irrelevant to the proceedings before this court whether the district court correctly concluded that the action for money damages was non-core, it is highly relevant that the court found that an action could encompass both core and non-core issues. Specifically, the district court reasoned:

[T]he mere fact that a claim is brought ancillary to a proper bankruptcy claim does not render the former a core proceeding. Although the case law does not specifically speak to this distinction, the word "proceeding" must refer to the specific causes of action and grounds for relief sought by a party, and not to the entire action. Any broader meaning would fail to comply with the Constitutional concerns of *Marathon.*

*Id.* at 425 (footnote omitted). The court went on to explain:

Some confusion might arise out of the unusual use of the word "proceeding." In the bankruptcy context, the "proceeding" may be thought of as the entire bankruptcy, from the initial filing of the petition to the final resolution. The word "proceeding" may also have a narrower application and refer to a single suit filed during the bankruptcy period, such as a suit to set aside a preference or to approve [a] reorganization plan.

The use of the word proceeding in the core/non-core discussion must be narrower still. The "proceeding" must refer to each cause of action or right of recovery pled. This is the only interpretation which would adequately heed the [C]onstitutional concerns in *Marathon.* If the word "proceeding" referred to the entire action before the court, a party could bring a state law claim within the purview of the bankruptcy judge merely by adding another count to, say, a motion to set aside a preference.

---

17. The claims bar date in this case for non-governmental entities was July 29, 1997. Both Household and Hurley filed timely claims. Household filed claim number 64 on June 20, 1997, which was later amended by claim number 73 filed on July 29, 1997. Hurley filed claim number 77 on July 29, 1997. Beneficial, however, filed claim number 90 on December 16, 1997, over four months after the expiration of the claims bar date. As no objection has been filed to Beneficial's claim, it is deemed allowed pursuant to 11 U.S.C.A. § 502(a) (West 1993).

This cannot be the case. Each claim must, on its own, satisfy the requirements of § 157(b). A district court must scrutinize each count and each asserted right for relief to determine which ones were properly before the bankruptcy judge for final resolution and which ones must receive *de novo* review. *Cf. In re Associated Grocers of Colorado*, 97 B.R. 39, 40 (Bankr.D.Colo. 1989) (affirming bankruptcy court's jurisdiction over two counts and denying jurisdiction for a third).

*Id.* at 425 n. 6. This court agrees. The mere fact that the cross-claims and third party actions against the Debtor are core proceedings does not somehow convert all of the issues raised by these adversaries into core proceedings. Instead, the court must examine each cause of action separately to determine if it is core or non-core.[18]

The remaining actions in these adversary proceedings concern the plaintiffs' claims based upon state law theories of, among other things, misrepresentation, negligence, conspiracy, suppression, deceit, and wanton and negligent hiring, training, and supervision. Similar to the actions advanced by Beneficial, Household, and Hurley against the Debtor, these actions are based exclusively upon state law rights. At best, these actions will be deemed to "arise under" title 11 only if they constitute part of the claims resolution process.[19] As discussed previously, the determination of whether these actions are core proceedings under the authority of 28 U.S.C.A. § 157(b)(2)(B) depends upon whether these actions are asserted against the Debtor and whether the respective plaintiffs have filed a proof of claim in the Debtor's case.[20] The Debtor has been

18. Beneficial relies upon the Sixth Circuit case of *Atassi v. McLaren (In re McLaren)*, 990 F.2d 850 (6th Cir.1993) in support of its position that all of the adversary proceedings before the court are core proceedings. Such reliance is misplaced. In reality, *McLaren* supports this court's conclusion that each cause of action arising in an adversary proceeding must be supported by its own "core" basis in order for the court to enter a final order or judgment with respect to that cause of action. *McLaren* involved a dischargeability action pursuant to 11 U.S.C.A. § 523(a)(2)(A) (West 1979 & Supp.1992). The bankruptcy court held that the debtor's obligation to the plaintiff was nondischargeable and entered a judgment against the debtor on the underlying debt. The district court affirmed the decision. The debtor appealed to the Sixth Circuit, arguing, among other things, that the bankruptcy judge did not have the statutory authority to enter a final judgment on the validity of the underlying debt. The Sixth Circuit disagreed, holding that the bankruptcy judge had the authority to enter such a judgment pursuant to 28 U.S.C.A. 157(b)(2)(B). *McLaren*, 990 F.2d at 853.

*McLaren* supports the conclusion that the cross-claims and third party actions against the Debtor are core proceedings. *See infra* note 20. However, it also exemplifies the need for a separate "core" basis for each cause of action raised in an adversary proceeding. Otherwise, the Sixth Circuit could have simply dismissed the debtor's argument by stating that dischargeability actions, including the entry of a judgment on the underlying debt, are core proceedings under the authority of § 157(b)(2)(I). However, it did not do so. Presumably, the Sixth Circuit operated under the premise that § 157(b)(2)(I) authorizes a bankruptcy judge to enter a final order as

to whether an existing debt is dischargeable while a separate "core" basis is needed to enter a final judgment on the underlying debt.

19. The plaintiffs' actions do not even remotely resemble any of the proceedings described in 28 U.S.C.A. § 157(b)(2)(C)–(N). Further, this court will not dilute the mandate of *Marathon* by virtue of a liberal construction of 28 U.S.C.A. § 157(b)(2)(A) and (O). *See Piombo Corp. v. Castlerock Properties (In re Castlerock Properties)*, 781 F.2d 159, 162 (9th Cir.1986) ("[S]tate law contract claims that do not specifically fall within the categories of core proceedings enumerated in 28 U.S.C. § 157(b)(2)(B)–(N) are related proceedings under § 157(c) even if they arguably fit within the literal wording of the two catch-all provisions, sections § [sic] 157(b)(2)(A) and (O)."); *New Magma Irrigation & Drainage District v. Board of Supervisors (In re New Magma Irrigation & Drainage District)*, 193 B.R. 528, 532 (Bankr.D.Ariz.1994) ("[The] two 'catch-all' definitions of a core proceeding should be relied upon with great care and caution."); 1 Collier on Bankruptcy ¶ 3.02[3][d][ii] (15th ed. rev.1998) ("[T]he very broad language of section 157(b)(2)(O) has led to some incorrect results which, if followed, would eviscerate *Marathon*.").

20. Again, if a party who filed a proof of claim in the Debtor's case asserts a state law action against the Debtor, then that action is a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B) so long as the action seeks recovery on the same grounds as those serving as the basis for the proof of claim. *Conejo Enters., Inc.*, 96 F.3d at 353; *S.G. Phillips Constructors, Inc.*, 45 F.3d at 704–06; *Meyertech Corp.*, 831 F.2d at 415–18; *Wood*, 825 F.2d at 97–98; *Argus Group 1700, Inc.*, 206 B.R. at 747–48.

named as a defendant in nineteen of the actions brought by individual purchasers of the satellite equipment.[21] However, only seven of the plaintiffs who have commenced actions against the Debtor have filed a proof of claim in the Debtor's case.[22] Each of these claims is based upon the state law theories of fraud, misrepresentation and negligence asserted in the plaintiffs' complaints against the Debtor. Accordingly, the actions asserted by these seven plaintiffs against the Debtor are core proceedings under the authority of 28 U.S.C.A. § 157(b)(2)(B). However, this is not to say that the entire action asserted by these seven plaintiffs is a core proceeding. The Debtor is only one of multiple defendants in each of these proceedings. These seven actions are core proceedings only to the extent of their action against the Debtor.

This leaves the court with four categories of actions that are presumptively non-core: (1) the actions against non-debtor parties asserted by those plaintiffs who have filed a proof of claim and named the Debtor as a defendant; (2) the actions against the Debtor asserted by those plaintiffs who named the Debtor as a defendant and did not file a proof of claim; (3) the actions against non-debtor parties asserted by those plaintiffs who named the Debtor as a defendant and did not file a proof of claim; and (4) the actions asserted by those plaintiffs who filed actions against non-debtor parties exclusively, regardless of whether they filed a proof of

claim. The court will next examine each of these categories to determine whether these proceedings are truly non-core and, if so, whether they are even related to the Debtor's case so as to vest the court with jurisdiction to hear them.

■ Categories (1), (3), and (4) can be addressed jointly because these actions, in essence, are actions asserted by a non-debtor party against a non-debtor party. The Sixth Circuit has noted that

> generally, bankruptcy jurisdiction does not extend to actions between third parties because the action would not be "related to" a bankruptcy proceeding. For example, a bankruptcy court would not hear a case between two creditors based on their prior dealings independent of the debtor.

*Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 483 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). One instance, however, where a third party dispute does relate to the bankruptcy arises in the case of certain indemnity rights. *See Dow Corning Corp.,* 86 F.3d at 482; *Pacor, Inc.,* 743 F.2d at 984.

*Pacor,* being one of the first courts to address this issue, involved a state court action by Higgins against Pacor for damages due to work-related exposure to asbestos supplied by Pacor, Pacor filed a third party complaint against the alleged manufacturer

---

**21.** The Debtor has been named as a defendant in Adversary Proceeding Nos. 97–3135, 97–3146, 97–3148, 97–3149, 97–3151, 97–3153, 97–3155, 97–3156, 97–3157, 97–3158, 97–3159, 97–3160, 97–3161, 97–3163, 97–3165, 97–3166, 97–3170, 97–3211, and 97–3231. The Debtor has also been named as a defendant in Adversary Proceeding Nos. 97–3051, 97–3106, 97–3107, 97–3108, and 97–3109. However, these actions were commenced by Beneficial as opposed to individuals who purchased the satellite equipment. *See supra* note 14. These actions, similar to the cross-claims and third party claims previously analyzed, are core proceedings under § 157(b)(2)(B). This only makes sense because these actions were initially cross-claims against the Debtor before they were severed in state court.

**22.** Judith M. Edwards, the plaintiff in Adversary Proceeding No. 97–3155, filed claim number 68 on July 28, 1997. Willie George McCall, the

plaintiff in Adversary Proceeding No. 97–3157, filed claim number 69 on July 28, 1997. Roosevelt McCall and Susan McCall, the plaintiffs in Adversary Proceeding No. 97–3161, filed claim number 70 on July 28, 1997. Mae B. Stewart, the plaintiff in Adversary Proceeding No. 97–3163, filed claim number 71 on July 28, 1997. Duffie Goldsmith, the plaintiff in Adversary Proceeding No. 97–3158, filed claim number 72 on July 28, 1997. Robert L. Battle, the plaintiff in Adversary Proceeding No. 97–3159, filed claim number 74 on July 29, 1997. Patricia Moss Mahone, the plaintiff in Adversary Proceeding No. 97–3156, filed claim number 75 on July 29, 1997.

For reasons unknown to the court, one of the plaintiffs filed a proof of claim in the Debtor's case even though he did not name the Debtor as a defendant in his action. This claim was filed by the plaintiff in Adversary Proceeding No. 97–3133.

of the asbestos, Johns–Manville Corporation, who thereafter filed a bankruptcy petition under Chapter 11. One month after the bankruptcy filing, the state court severed the third party action from the primary action against Pacor. Pacor then sought to have the entire proceeding removed to federal bankruptcy court and transferred to the district where the Johns–Manville bankruptcy was being administered. The issue on appeal before the Third Circuit was whether the Higgins–Pacor matter was "related to" the bankruptcy case so as to vest the bankruptcy court with jurisdiction to hear it. Concluding that the Higgins–Pacor matter was not "related to" the bankruptcy, the Third Circuit stated:

> [T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate.... At best, it is a mere precursor to the potential third party claim for indemnification by Pacor against Manville. Yet the outcome of the Higgins–Pacor action would in no way bind Manville.... Since Manville is not a party to the Higgins–Pacor action, it could not be bound by res judicata or collateral estoppel.... Thus, the bankruptcy estate could not be affected in any way until the Pacor–Manville third party action is actually brought and tried.

*Pacor, Inc.*, 743 F.2d at 995. The court went on to distinguish a case cited by Pacor in support of its argument in favor of bankruptcy court jurisdiction.

> In *In re Brentano's*, 27 B.R. 90 (Bankr. S.D.N.Y.1983), MacMillan, (a nondebtor) agreed to act as guarantor of Brentano's (the debtor's) obligations under a lease. In turn, Brentano's contractually agreed to indemnify MacMillan for any liability or judgments incurred as a result of this guarantee agreement. When Brentano's defaulted on the lease, the landlord sued MacMillan to enforce the guarantee. Mac-Millan successfully removed the action to bankruptcy court as a proceeding "related to" bankruptcy.
>
> In *Brentano's*, however, it is clear that the action between the landlord and Mac-Millan could and would affect the estate in bankruptcy. By virtue of the indemnification agreement between Brentano's and MacMillan, a judgment in favor of the landlord on the guarantee action would automatically result in indemnification liability against Brentano's....
>
> In this case, however, there would be no automatic creation of liability against Manville on account of a judgment against Pacor.... Manville [has not] agreed to indemnify Pacor, and thus a judgment in the Higgins–Pacor action could not give rise to any automatic liability on the part of the estate.... There would therefore be no effect on administration of the estate, until such time as Pacor may choose to pursue its third party claim.

*Id.* at 995–96. Accordingly, the Third Circuit concluded that indemnity rights do not give rise to "related to" jurisdiction in the absence of automatic liability.

The Sixth Circuit recently addressed the issue of "related to" jurisdiction based upon indemnification rights in *Lindsey v. O'Brien, Tanksi, Tanzer and Young Health Care Providers (In re Dow Corning Corp.)*, 86 F.3d 482 (6th Cir.1996). *Dow Corning Corp.* arose out of "one of the world's largest mass tort litigations." *Id.* at 486. The debtor was a producer of silicone gel breast implants and a supplier of raw materials to other manufacturers who produced the same. Thousands of breast implant recipients commenced personal injury actions against the debtor and, among other parties, other implant manufacturers based upon alleged damages arising from the product. Two of the debtor's co-defendants, being shareholders of the debtor, asserted cross-claims against the debtor. The litigation led to the debtor's eventual filing of a petition under Chapter 11 of the Bankruptcy Code in the United States District Court for the Eastern District of Michigan. Thereafter, the debtor and several of the manufacturers moved the district court in which the bankruptcy was filed to transfer to that court, pursuant to 28 U.S.C.A. § 157(b)(5) (West 1993), many of the actions that were either pending in federal court or in the process of being removed to federal

court.[23] The district court ultimately transferred only those actions pending against the debtor, reasoning that it did not possess "related to" jurisdiction over the remaining actions. The debtor's co-defendants appealed to the Sixth Circuit, which was confronted with the issue of whether the actions that were not transferred by the district court were "related to" the debtor's bankruptcy case. The Sixth Circuit reversed the district court, holding that the remaining actions were "related to" the debtor's case due to existing or potential claims for contribution and indemnification. *Id.* at 493. The court reasoned that the actions had a conceivable impact on the debtor's bankruptcy estate because two of the co-defendants had already filed cross-claims against the debtor while the other co-defendants, although not having filed cross-claims in the pending litigation or proofs of claim in the debtor's bankruptcy case, represented that they intended to file indemnification and contribution actions against the debtor.[24] *Id.* at 494. "Cognizant of the fact that 'related to' jurisdiction cannot be limitless," the court nevertheless concluded that "the possibility of contribution or indemnification liability [was] far from attenuated." *Id.*

■■■■ In the adversary proceedings pending before this court, Beneficial, Household, and Hurley assert indemnification rights, by virtue of agreement, against the Debtor. Moreover, they have filed proofs of claim in the Debtor's Chapter 11 case. Consequently, the actions asserted by the plaintiffs against Beneficial, Household, and Hurley could conceivably have an effect on the Debtor's estate and are therefore non-core but related to the Debtor's bankruptcy case. However, Beneficial, Household, and Hurley are not the only non-debtor defendants in the proceedings before the court. Several of the actions have been asserted against the dealerships and individual salespersons who sold the satellite equipment. Because these non-debtor defendants do not claim to possess indemnity rights against the Debtor, have not commenced actions against the Debtor and have not filed claims in the Debtor's case, the proceedings commenced by the plaintiffs against these defendants are non-core and unrelated to the Debtor's case.[25] Accordingly, the court does not even possess subject matter jurisdiction to hear these actions.

■■■■ The final category of the plaintiffs' actions that must be addressed are those advanced against the Debtor by plaintiffs who named the Debtor as a defendant but did not file a proof of claim in the Debtor's case. The court has already articulated the general rule that an action commenced against the Debtor by a party who filed a proof of claim in the Debtor's case is a core proceeding so long as the claim and the action share the same basis for liability.[26] A corollary to this rule is the principle of law

**23.** 28 U.S.C.A. § 157(b)(5) (West 1993) provides:

> The district court shall order that personal injury tort and wrongful death claims shall be tried in the district court in which the bankruptcy case is pending, or in the district court in the district in which the claim arose, as determined by the district court in which the bankruptcy case is pending.

**24.** Although liability on the part of the debtor was not automatic, the Sixth Circuit explained that it had previously rejected the automatic liability standard for "related to" jurisdiction adopted by the Third Circuit in *Pacor. Dow Corning Corp.*, 86 F.3d at 491 (citing *Salem Mortgage Co.*, 783 F.2d at 635).

**25.** The key distinction between these proceedings and those actions against the non-debtor defendants in *Dow Corning Corp.* is that the defendants in *Dow* made it clear that they intended to seek contribution and indemnification from the debt-or. The defendants in question have revealed no such intent, either expressly or implicitly. They have not filed cross-claims or third party actions against the debtor nor have they declared any intent to do so. Moreover, they have not filed proofs of claim in the Debtor's case.

Similarly, the court notes that third party actions have not been filed in four of the adversary proceedings to which Household is a party. *See supra* note 13. Because no action has been taken against the Debtor, one could argue that the plaintiffs' actions against Household are unrelated to the Debtor's bankruptcy. Notwithstanding, the court deems these four particular proceedings to be related proceedings because Household has filed a proof of claim and has demonstrated an intent to seek indemnification from the Debtor by virtue of its cross-claims and third party claims filed in twenty-nine other adversaries addressed in this memorandum.

**26.** *See supra* note 20.

that where a party brings an action against the Debtor without filing a proof of claim, the action is not a core proceeding under the authority of 28 U.S.C.A. § 157(b)(2)(B). *See Wood,* 825 F.2d at 97–98; *Argus Group 1700, Inc.,* 206 B.R. at 748 n. 17. Consequently, the actions commenced against the Debtor by plaintiffs who have not filed a proof of claim in the Debtor's case are non-core proceedings that are related to the Debtor's bankruptcy case.

To summarize, the court has before it numerous "proceedings," as the term is used in 28 U.S.C.A. § 157(b) and (c), within the pending fifty-four adversary proceedings. Beneficial, Household, and Hurley have initiated actions against the Debtor which are core proceedings under the authority of § 157(b)(2)(B). Some of the plaintiffs have filed actions against the Debtor. Those actions against the Debtor commenced by plaintiffs who have filed a proof of claim in the Debtor's case are also core proceedings under § 157(b)(2)(B) while the actions against the Debtor commenced by those plaintiffs who have not filed a proof of claim are non-core but related to the Debtor's bankruptcy case. The plaintiffs have also commenced actions against several non-debtor parties. Of these actions, the ones brought against Beneficial, Household, and Hurley are non-core but related to the Debtor's case while the ones brought against other non-debtor parties are non-core and unrelated to the Debtor's case.

A number of courts that have been confronted with both core and non-core proceedings apply a predominance test to determine whether the entire action before it is core or non-core. *See Hughes–Bechtol, Inc. v. Ohio (In re Hughes–Bechtol, Inc.),* 141 B.R. 946, 949 (Bankr.S.D.Ohio 1992); *Hughes–Bechtol, Inc. v. Construction Management, Inc. (In re Hughes–Bechtol, Inc.),* 132 B.R. 339, 348 (Bankr.S.D.Ohio 1991), *aff'd,* 144 B.R. 755 (S.D.Ohio 1992); *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing &*

*Sheet Metal, Inc.),* 130 B.R. 768, 776 (Bankr. S.D.Ohio 1991); *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.),* 111 B.R. 892, 901 (Bankr.S.D.Cal.1990); *Sibarium v. NCNB Texas Nat. Bank,* 107 B.R. 108, 115 (N.D.Tex.1989); *Germain v. Connecticut Nat'l Bank (In re O'Sullivan's Fuel Oil Co., Inc.),* 88 B.R. 17, 20–21 (D.Conn.1988); *Gagel v. Kingston–Greene Partners, Ltd. (In re GWF Investment, Ltd.),* 85 B.R. 771, 778 (Bankr.S.D.Ohio 1988); *Unsecured Creditors Comm. v. Noyes (In re STN Enters., Inc.),* 73 B.R. 470, 484 (Bankr.D.Vt.1987); *Blackman v. Seton (In re Blackman),* 55 B.R. 437, 443 (Bankr.D.C.1985). These courts simply weigh the core and non-core proceedings side by side and determine which of the two predominates. The entire action is then labeled as core or non-core because one type of proceeding predominates the entire action. This court believes that this approach violates 28 U.S.C.A. § 157(b) & (c). There is no question that these courts, if it is determined that the core proceedings predominate, are rendering final judgments and orders in non-core proceedings without the consent of the parties. Accordingly, this court rejects the predominance approach. The better approach is that articulated by Judge Tauro in the *Ralls* case. Each action/proceeding must be supported by its own jurisdictional basis. If the entire action contains both core and non-core issues, then the bankruptcy court must simply enter final orders and judgments in those proceedings that are core and submit to the district court proposed findings of fact and conclusions of law in those proceedings that are non-core but related.[27] As such, this court's determination of the core/non-core issue is complete. Final orders and judgments may be entered with respect to the actions asserted by Beneficial, Household, and Hurley against the Debtor and those asserted against the Debtor by the plaintiffs who have filed a proof of claim. Proposed findings of fact and conclusions of law must be submitted to the district court with respect to those actions asserted against

---

**27.** Of course, the bankruptcy court cannot exercise jurisdiction over those proceedings that are non-core and unrelated to the bankruptcy case. Furthermore, this discussion ignores the fact that the parties to one or more of the adversary proceedings involving non-core but related issues may have consented to the entry of final orders and judgments by the bankruptcy judge pursuant to 28 U.S.C.A. § 157(c)(2) (West 1993).

the Debtor by the plaintiffs who have not filed proofs of claim and those actions asserted against Beneficial, Household, and Hurley by all of the plaintiffs if the parties have not consented to the entry of final orders and judgments by this court. Lastly, the court has no jurisdiction to hear the actions asserted by all plaintiffs against non-debtor parties other than Beneficial, Household, and Hurley.

As to those proceedings which are non-core and unrelated, abstention is not at issue. *See S.G. Phillips Constructors, Inc.*, 45 F.3d at 708 ("The act of abstaining presumes that proper jurisdiction otherwise exists."). The court cannot hear these proceedings. Therefore, the court need only determine whether it should abstain from hearing: (1) the core proceedings against the Debtor commenced by parties who have filed a proof of claim; and (2) the non-core but related proceedings against the Debtor commenced by the plaintiffs who have not filed a proof of claim as well as those against Beneficial, Household, and Hurley commenced by all of the plaintiffs. Because mandatory abstention does not apply to core proceedings, the court need only determine whether it must abstain from hearing the non-core but related proceedings. Moreover, because mandatory abstention requires the timely filing of a motion to abstain, the court need only make this determination in those adversary proceedings in which a motion for abstention has been filed.[28]

### Remaining Elements of Mandatory Abstention

■■■ There are four requirements for mandatory abstention that have not yet been addressed. First, the proceeding must be based on a state law claim or cause of action. *Dow Corning Corp.*, 113 F.3d at 570. It is abundantly clear that the proceedings in question are grounded exclusively on state law theories of recovery. Second, the proceedings must lack a federal jurisdictional basis absent the bankruptcy. *Id.* The twenty-five adversary proceedings in which abstention motions have been filed evidence no basis for federal jurisdiction apart from 28 U.S.C.A. § 1334(b).[29] Third, the proceedings must have been commenced in a state forum.[30] *Dow Corning Corp.*, 113 F.3d at 570. Each of the adversary proceedings in question was commenced in a state court of Ala-

28. *See supra* note 15.

29. It is readily apparent that there is no federal question jurisdiction over these proceedings pursuant to 28 U.S.C.A. § 1331 (West 1993). Furthermore, none of the actions satisfy the $75,000.00 amount in controversy requirement for diversity jurisdiction under 28 U.S.C.A. § 1332(a) (West 1993 & Supp.1997). Five of the actions, Adversary Proceeding Nos. 97–3123, 97–3146, 97–3153, 97–3210, and 97–3258, include a prayer for a specific amount of damages less than $75,000.00. These actions clearly do not satisfy the amount in controversy requirement for diversity jurisdiction. One of the actions, Adversary Proceeding No. 97–3150, seeks damages "in excess of the jurisdictional limits" of the circuit court in which it was filed. Ala.Code § 12–11–30(1) (1975 & Supp.1996) provides:

> The circuit court shall have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds ten thousand dollars ($10,000), exclusive of interest and costs, and shall exercise original jurisdiction concurrent with the district court in all civil actions in which the matter in controversy exceeds three thousand dollars ($3,000), exclusive of interest and costs.

On the other hand, the vast majority of the adversary proceedings in question give no indication of the amount in controversy but merely make a general prayer for compensatory and punitive damages (e.g., "whatever the jury deems reasonable").

It is the burden of a removing party to establish the grounds for federal jurisdiction. *See Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 453–54 (6th Cir.1996); *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 948–49 (6th Cir.1994). Because there is no proof that the actions falling within the latter two categories meet the federal jurisdictional requirement, no basis for federal jurisdiction apart from § 1334(b) has been established.

30. Some courts have held that abstention does not apply to actions that have been removed from state court pursuant to 28 U.S.C.A. § 1452(a) (West 1994) because there is no longer an action pending in state court and a federal court's decision to abstain does not send the action back to state court. *See Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 773 (10th Cir. BAP 1997) (collecting cases). The majority of courts, including the Sixth Circuit, have rejected this approach, holding that abstention does not require a pending state court action but only the commencement of such an action. *See Robinson*, 918 F.2d at 584 n. 3; *Midgard Corp.*, 204 B.R. at 774 (collecting cases).

bama before being removed to federal court. Fourth, the proceeding must be capable of timely adjudication in the state court forum. *Id.* The various state courts from which these proceedings were removed can resolve them more expeditiously than if this court were required to do the entire job itself.[31] Accordingly, grounds for mandatory abstention exist and this court must abstain from hearing the non-core but related proceedings arising in the twenty-five adversary proceedings in which abstention motions have been filed.

## B.   Permissive Abstention

A court's authority to abstain is not limited only to those proceedings in which a motion to abstain has been filed. The court may raise the issue of permissive abstention, pursuant to § 1334(c)(I), sua

sponte. *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1207 n. 10 (5th Cir.1996); *see also Dow Corning*, 86 F.3d at 497 ("It is for the district court to determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases."). Moreover, permissive abstention applies to both non-core related and core proceedings. *Gober*, 100 F.3d at 1206; *S.G. Phillips Constructors, Inc.*, 45 F.3d at 708; *Gaston v. Condra (In re Condra)*, 212 B.R. 987, 992 (Bankr.M.D.Ala. 1997). Therefore, this court will consider whether the doctrine of permissive abstention has application to the non-core but related proceedings in the adversary proceedings in which no motion for abstention has been filed as well as the core proceedings in all of the adversary proceedings pending before it.[32]

---

**31.** The twenty-five adversary proceedings in which abstention motions have been filed were removed from fourteen different Alabama state courts. Division of labor and state court familiarity with state law issues are two factors that weigh heavily in favor of this conclusion. Additionally, as hereinafter discussed, the plaintiffs in all adversary proceedings, excepting Nos. 97–3051, 97–3106, 97–3107, 97–3108, and 97–3109, have demanded a jury trial. Because the parties have not consented to the conduct of a jury trial by the bankruptcy judge as required by 28 U.S.C.A. § 157(e) (West Supp.1997), the district court would ultimately be required to impanel the jury to hear each action. This means that this court would presumably handle the pretrial issues arising in each adversary proceeding and would then transfer it to the district court for trial. This two-tiered requirement, coupled with the district court's heavy civil and criminal caseload and its obligation to give precedence to criminal actions, makes it uncertain just when these civil actions could be brought to trial.

**32.** Many courts have noted that abstention pursuant to 28 U.S.C.A. § 1334(c) represents a narrow exception to the general duty of federal courts to adjudicate controversies properly before them. *See S.N.A. Nut Co. v. Haagen–Daz Co. (In re S.N.A. Nut Co.)*, 206 B.R. 495, 501 (Bankr. N.D.Ill.1997); *Brothers v. Tremaine (In re Tremaine)*, 188 B.R. 380, 384 (Bankr.S.D.Ohio 1995); *Hackeling v. Rael Automatic Sprinkler Co., Inc. (In re Luis Electrical Contracting Corp.)*, 165 B.R. 358, 366 (Bankr.E.D.N.Y.1992); *Mills v. Mills (In re Mills)*, 163 B.R. 198, 203 (Bankr. D.Kan.1994). In support of this proposition, these courts rely on the Supreme Court decision of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 812–14, 96 S.Ct.

1236, 1244, 47 L.Ed.2d 483 (1976), *reh'g denied*, 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976). This court is of the opinion that such reliance is misplaced. The *Colorado River* decision does not address statutory abstention with respect to bankruptcy matters but instead addresses common law abstention generally applicable to federal courts. This distinction was cogently articulated in the case of *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422 (Bankr.S.D.Tex.1987).

> The general rule derived from cases which address the issue of abstention in nonbankruptcy cases is that abstention is the narrow exception to the congressional grant of subject matter jurisdiction bestowed upon the federal courts. *See Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976)....
>
> ....
>
> Abstention within the context of a bankruptcy proceeding ... differs importantly from abstention in a nonbankruptcy context.... While authority for abstention from a nonbankruptcy case depends solely upon case law, abstention by the district court in bankruptcy proceedings is specifically authorized by section 1334(c)(1) and mandated by section 1334(c)(2). The intent of Congress is that abstention must play a far more significant role in limiting those matters, which although properly brought within the reach of jurisdiction under Title 11, are nonetheless best left for resolution to a state or other bankruptcy forum.

*Id.* at 424–25. The court went on to explain that the bankruptcy jurisdiction of federal courts under 28 U.S.C.A. § 1334(b) is extremely broad. Although this broad jurisdictional grant raises

In determining whether permissive abstention is appropriate, courts commonly look to the following factors: (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C.A. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted core proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden of the bankruptcy court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties. *See Refrigerant Reclamation Corp. of Am. v. Todack (In re Refrigerant Reclamation Corp. of Am.)*, 186 B.R. 78, 84 (Bankr. W.D.Tenn.1995) (citing *In re Chicago, Milwaukee, St. Paul & Pacific R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir.1993); *Eastport Assocs. v. Los Angeles (In re Eastport Assocs.)*, 935 F.2d 1071, 1075–76 (9th Cir.1991); *Christensen v. Tucson Estates, Inc. (In re Tucson Estates, Inc.)*, 912 F.2d 1162, 1167 (9th Cir. 1990)). These factors were first enumerated by Judge Mahoney in the scholarly decision of *Republic Reader's Serv., Inc. v. Magazine Serv. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422 (Bankr.S.D.Tex.

1987). As the court examines these factors, it will refer to Judge Mahoney's decision in those instances where doing so will further shed light on the purpose and intent of these factors. The court will first consider these factors as they relate to the non-core but related proceedings in question and then the court will consider their applicability to all of the core proceedings.

### 1. Non–Core But Related Proceedings

The first factor that Judge Mahoney deemed relevant to the permissive abstention analysis is the effect of abstention on the administration of the estate. In discussing this factor, she noted:

> Where a cause of action for monetary damages based primarily on state law can be litigated in state court without substantial delay and disruption to the orderly administration of the estate, the best forum for resolution of that action is state court, *irrespective* of whether. the legal issues present unsettled questions of state law.

*Republic Reader's Serv., Inc.*, 81 B.R. at 426. The court is confident that abstention in the case of the related proceedings in question would not result in substantial delay and disruption to the orderly administration of the Debtor's estate. If anything, it could possibly promote the orderly administration of the estate. This court has already noted that the numerous state courts from which the adversary proceedings have been removed are able to resolve these actions much more expeditiously than this court simply because of the division of labor and familiarity with Alabama state law.[33]

---

concerns that matters best left to state courts may find their way into federal court, the court noted that the legislature's solution to this problem was not to restrict the jurisdictional grant but to provide broad powers to abstain from such matters.

"There is no necessary reason why [the above mentioned] concern must be met by restrictive interpretations of the statutory grant of jurisdiction under section 1334. The Act grants the district court *broad power* to abstain whenever appropriate 'in the interest of justice, or in the interest of comity with State courts or respect for State law[.']" The abstention provisions of the Act demonstrate the intent of Congress that

concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case."
*Republic Reader's Serv., Inc.*, 81 B.R. at 425–26 (quoting *Wood*, 825 F.2d at 93).

**33.** The adversary proceedings before the court have been removed from twenty-two different courts in the state of Alabama and one in the state of Georgia. Moreover, as noted earlier, the procedural posture of these adversary proceedings makes it uncertain as to when these proceedings will go to trial. *See supra* note 31.

Second, with respect to the extent to which state law issues predominate over bankruptcy issues, it is clear that state law issues are the only issues involved in these proceedings. Third, similar to the adversaries in which abstention motions were filed, the complaints filed in the remaining adversaries do not state a separate federal jurisdictional basis apart from the bankruptcy.[34] As to the degree of relatedness of the non-core proceedings, the court notes that these proceedings are related to the bankruptcy only if the plaintiffs prevail on their state law actions against the Debtor, Beneficial, Household, and Hurley. Even then, Beneficial, Household, and Hurley must thereafter prevail in their actions against the Debtor for these proceedings to have an effect on the Debtor's bankruptcy estate. Although these proceedings are related to the bankruptcy case because they could conceivably have an effect on the estate, these two contingencies lead to the conclusion that these proceedings, at the present time, remain somewhat remote from the bankruptcy.

Another relevant factor to be considered is the burden of the court's docket. In this respect, Judge Mahoney noted that "[a]dversary proceedings ... require an enormous expenditure of scarce judicial resources. Many pressing matters which cannot be delayed without harm to estates or creditors place increasing demands on the court's time. Adversary proceedings, as a consequence, are often positioned last in priority." *Id.* at 428 (footnote omitted).[35] Regardless of the present state of this court's docket apart from the adversary proceedings filed in the Debtor's case, these adversary proceedings alone create a substantial burden on the court's docket that will divert its limited resources from "pressing matters which cannot be delayed" without harming other litigants that look to this court for relief. Judge Mahoney also deemed it relevant to consider the existence of a right to a jury trial. It has already been mentioned that a demand for a jury trial has been made by the plaintiffs in forty-nine of the adversary proceedings before the court. Because the parties have not consented to this court's hearing of such a trial, this court cannot conduct the same.[36] Instead, this court must simply oversee the adversary proceedings until they are ready for trial in the district court.[37] Another factor relevant to the present analysis is the presence of non-debtor parties.[38] Apart from the actions asserted against the Debtor by plaintiffs who have not filed proofs of

---

**34.** None of the complaints at issue establish federal question jurisdiction pursuant to 28 U.S.C.A. § 1331. The vast majority of these complaints include only a general prayer for relief that does not establish a particular amount in controversy. As to the remainder, a few pray for damages clearly below the amount in controversy requirement of 28 U.S.C.A. § 1332(a) while the complaint in Adversary No. 97–3132 seeks damages "in excess of the jurisdictional limits" of the circuit court in which it was filed. These complaints do not satisfy the amount in controversy requirement of § 1332(a). *See supra* note 29.

**35.** Judge Mahoney provided a few examples of "pressing matters which cannot be delayed" without harming the interests of other debtors and creditors who depend upon the swift administration of a bankruptcy court: (1) motions for relief from the automatic stay; and (2) motions for the use of cash collateral. *Republic Reader's Serv., Inc.,* 81 B.R. at 428 n. 7.

**36.** This court's authority to conduct a jury trial is set forth in 28 U.S.C.A. § 157(e) (West Supp. 1997), which provides:

If the right to a jury trial applies in a proceeding that may be heard under this section by a bankruptcy judge, the bankruptcy judge may conduct the jury trial if specially designated to exercise such jurisdiction by the district court and with the express consent of all the parties.

**37.** This is another factor that bears on the effect of abstention with respect to the efficient administration of the estate. The state courts of Alabama are able to grant the parties a jury trial conducted by one judge in one court. In the present proceedings, on the other hand, a jury trial can be heard by the district court only. Thus, if these proceedings are to be resolved by jury trial in federal court, two different judges would have to familiarize themselves with the proceeding: (1) the bankruptcy judge, in order to prepare the proceeding for trial and resolve all pre-trial issues; and (2) the district court judge, in order to conduct a jury trial of the proceeding.

**38.** Judge Mahoney stated that "[t]he right of non-debtor parties to a nonbankruptcy court forum, *particularly if a jury trial right exists in a non-debtor's case,* presents a compelling argument for abstention." *Republic Reader's Serv., Inc.,* 81 B.R. at 428–29 (emphasis added).

claim, the related proceedings involve non-debtor parties exclusively.

Each of the foregoing factors compel this court to abstain from hearing the related proceedings in those adversaries in which no abstention motion has been filed. However, there is one additional factor that this court deems most significant. This factor concerns the possibility that the removal of these proceedings to this court by Beneficial, Household, and Hurley involved an element of forum shopping.[39] Specifically, the fact that Beneficial, Household, and Hurley have removed these proceedings from county circuit courts in all parts of Alabama, and in one instance, Georgia, to a bankruptcy court in Tennessee increases the likelihood that the plaintiffs will not be able to afford to continue with the prosecution of their actions. As to this factor, Judge Mahoney stated:

> Another factor to be considered is whether the proceeding was filed in bankruptcy court for the purpose of forum shopping in order to gain some adversarial advantage rather than for the reason that the proceeding is so related to the estate that failure to adjudicate the proceeding within a bankruptcy forum would cause harm to or impede efficient administration of the estate. All courts should attempt to protect both the state and federal court systems from the illegitimate gamesmanship involved in forum shopping.

*Id.* at 428. The court has already noted that a decision to abstain from the proceedings in question would not harm or impede the efficient administration of the estate. On the other hand, a decision not to abstain, for all practical purposes, could deprive these plaintiffs, all of whom, with the exception of Beneficial, are presumably consumers, of their

day in court. Accordingly, this court will exercise its discretion to abstain from hearing these related proceedings under the authority of § 1334(c)(1).

### 2. Core Proceedings

It has already been noted that courts may abstain from hearing core proceedings under the authority of § 1334(c)(1). Most of the reasons for permissive abstention discussed with respect to the related proceedings are also persuasive with respect to the core proceedings pending before the court.[40] On the other hand, the court is reluctant to abstain from hearing core proceedings. However, Judge Mahoney noted that this concern need not arise where state law issues predominate the claims resolution process, as they do in these core proceedings.

> Where a claim asserted against an estate involves legal issues in which state law predominates, a claim can be litigated in state court to the point of judgment, with enforcement of the judgment stayed until further order of the bankruptcy court. *This result follows even though a formal proof of claim, the allowance or disallowance of which constitutes a core proceeding, has been asserted against the estate.*

*Republic Reader's Serv., Inc.*, 81 B.R. at 426. Moreover, there is one practical matter that the court cannot escape. Almost every core proceeding before it is part of an adversary proceeding that contains both unrelated proceedings which this court has no jurisdiction to hear and related proceedings with respect to which this court either must abstain from hearing under § 1334(c)(2) or is compelled to abstain from hearing under § 1334(c)(1). The only adversaries that do not contain either type of proceeding are those adver-

---

**39.** It appears from comments of the attorney representing the Debtor at the commencement of its Chapter 11 case, Kyle Weems, that the Debtor was a participant in seeking a forum outside the States of Alabama and Georgia. At a September 18, 1997 hearing on an application for compensation filed by Mr. Weems, the court was advised that Mr. Weems' future participation in the Debtor's bankruptcy case would be limited. Specifically, the following exchange took place:

> MR. WEEMS: ... We have pretty well completed our task, which was basically to move all those Alabama cases up here.

> THE COURT: That was your task?
> MR. WEEMS: Yeah.

Subsequent to September 18, 1997, the Debtor has been represented in all aspects of its case and these adversary proceedings by Dean B. Farmer and the law firm of Hodges, Doughty & Carson.

**40.** One of the aforementioned factors that was relevant to the analysis of the related proceedings that is no longer relevant with respect to the core proceedings is the degree of relatedness of the proceeding.

sary proceedings between Beneficial, as plaintiff, and the Debtor, as defendant.[41] The court will not abstain from hearing these five adversary proceedings, Adversary Proceeding Nos. 97–3051, 97–3106, 97–3107, 97–3108, and 97–3109, since they are exclusively core proceedings. As to the remainder of the pending core proceedings, the court cannot entertain these proceedings without exceeding its jurisdiction or violating the mandate of § 1334(c). Accordingly, the court has little choice but to abstain from hearing these core proceedings under the authority of § 1334(c)(1).

### III

As a final note on the abstention issue, the court deems it important to address the concerns of the Sixth Circuit, as articulated in *Lindsey v. Dow Chemical Co. (In re Dow Corning Corp. .)*, 113 F.3d 565 (6th Cir.1997), with regard to global abstention analyses. As noted earlier, the district court in which the Chapter 11 case of Dow Corning Corporation was pending was confronted with a motion to transfer, pursuant to 28 U.S.C.A. § 157(b)(5), numerous personal injury actions against the debtor and other breast implant manufacturers. The district court, concluding that it did not possess jurisdiction over the actions against the non-debtor defendants, transferred only those actions against the debtor. On appeal, the Sixth Circuit held that the district court did possess subject matter jurisdiction over the actions against the non-debtor defendants and remanded the matter "to determine in each individual case whether hearing it would promote or impair efficient and fair adjudication of bankruptcy cases." *See Dow Corning Corp.*, 113 F.3d at 568. On remand, the district court abstained from hearing these actions. *See In re Dow Corning Corp.*, No. 95–CV–72397–DT, 1996 WL 511646 (E.D.Mich. Jul. 30, 1996). The debtor and the non-debtor defendants responded by filing a petition for a writ of mandamus with the Sixth Circuit. In *Lindsey v. Dow Chemical Co. (In re Dow Corning Corp.)*, 113 F.3d 565 (6th Cir.1997), the Sixth Circuit stated in no uncertain terms that the district court was in "clear error" when it globally abstained

from hearing the actions against the non-debtor defendants.

The order of remand required the district court to make a case-by-case determination of whether, in light of the findings contained in the order of remand, abstention was statutorily mandated or appropriate as a matter of discretion, and Dow Corning and its shareholders were entitled to have that order followed. Instead, completely disregarding those findings, the district court made a blanket determination that mandatory abstention under § 1334(c)(2) was appropriate, and in the alternative, held that it would exercise discretionary abstention to avoid transfer of the shareholders' claims to the Eastern District of Michigan. Both determinations were fraught with clear error.

*Id.* at 569–570.

With respect to the district court's mandatory abstention analysis, the Sixth Circuit noted that the lower court "failed to make the necessary case-by-case inquiry" required for mandatory abstention. *Id.* at 570. Because the district court did not conduct a hearing, accept evidence on the issue, or examine "a single individual claim," it failed to realize that some of the cases did not satisfy the requirements of mandatory abstention. *Id.* One such deficiency was the fact that motions for abstention were not filed "in many of the cases." *Id.* Unlike the district court's situation in *Dow Corning Corp.*, the actions subject to this court's abstention inquiry have already been transferred to this court. Accordingly, this court is in possession of the entire record in these actions from their commencement. As a result, this court has been able to examine each individual file to determine whether the requisite elements of mandatory abstention have been satisfied. Indeed, similar to the situation in *Dow Corning Corp.*, mandatory abstention is not proper in a number of the actions because motions for abstention were not filed. Because this court has performed a case-by-case inquiry, such defects have been addressed.

**41.** *See supra* note 14.

As to the district court's permissive abstention analysis, the Sixth Circuit similarly noted that "[t]he district court did not examine a single tort claim to determine whether discretionary abstention was appropriate." *Id.* Specifically, the Sixth Circuit noted that the district court: (1) failed to explain "why the state law nature of the claims justified discretionary abstention"; and (2) "ignored the fact that at least some of the claims have an independent basis for jurisdiction in federal court." *Id.* at 570–71. To the contrary, this court has undertaken a thorough analysis of the requirements of permissive abstention, with particular deference given to the reasoning of the very judge who developed the modern approach to permissive abstention under § 1334(c)(1). Moreover, this court has examined each complaint to determine whether an independent basis for federal jurisdiction exists. The Sixth Circuit also concluded that the district court's permissive abstention analysis "overlooked the risks to Dow Corning's estate clearly articulated in [its] prior decision." *Id.* at 571. Contrary to Dow Corning's Chapter 11 case, which concerns "one of the world's largest mass tort litigations" in which Dow Corning Corporation envisions the transfer of the breast implant claims to the District Court for the Eastern District of Michigan "as the first step in ensuring a feasible plan of reorganization," *Dow Corning Corp.,* 86 F.3d at 486, no such risks exist in this case because the Debtor in the present case has no ongoing business to reorganize but, rather, seeks to liquidate its few assets. According to Section VII(C)(4) of the Disclosure Statement for Plan of Reorganization Statement of Best Reception Systems, Inc., filed January 8, 1998,

the Debtor will have approximately $233,-728.34 available on the Effective Date [of the Plan] and after estimated reserves and pre-petition administrative expenses, will have between $75,000.00 and $100,000.00 available for distribution. From this amount the Debtor will have remaining for distribution $36,000.00 to Class 12 Satellite Claimants and approximately $48,000.00 to holders of Class 17 claims[, being the allowed unsecured claims other than Class 12 Satellite Claimants].

For the foregoing reasons which are distinguishable from this court's abstention analyses, the Sixth Circuit issued a writ of mandamus ordering the district court to transfer the actions against the debtor's shareholders. *Dow Corning Corp.,* 113 F.3d at 572.

Once the transfer has been accomplished, the cases should be indexed and cross-referenced so that, in any proceeding in which a motion for abstention is filed, the district court may make the required abstention determinations and adequately state its reasoning as to each such proceeding.

*Id.* Because this court already possesses the files subject to its abstention analyses and because this court has "indexed and cross-referenced" these files, this court is of the opinion that it has complied with the mandate of *Dow Corning Corp.,* to perform a case-by-case inquiry when considering whether to abstain under the authority of § 1334(c).[42]

---

**42.** This court does not believe that *Dow Corning Corp.* mandates a hearing prior to a ruling with respect to § 1334(c). In neither of its decisions did the Sixth Circuit order the district court to hold a hearing prior to ruling on the abstention issue. Instead, the Sixth Circuit required the district court to make a case-by-case determination. *See Dow Corning Corp.,* 113 F.3d at 572; *Dow Corning Corp.,* 86 F.3d at 482. Because the district court did not have before it the files that were subject to the abstention issue, the only way for the court to make such a case-by-case determination without transferring the files was to hold a hearing. This conclusion is supported by the very language used by the Sixth Circuit: "Despite our clear articulation of the risks to Dow Corning's estate and our call for individualized abstention determinations, the district court,

without benefit of a hearing and without analysis of any individual claim, globally abstained from the cases against the shareholders." *Dow Corning Corp.,* 113 F.3d at 568–69. Given the absence of a direct order to hold a hearing, this court construes the foregoing language to mean that an individualized determination can be based upon either an analysis of the record in each individualized file or an examination of individualized evidence introduced at a hearing. Moreover, it is revealing to note that the Sixth Circuit, in the above quoted sentence, referred to a hearing as a "benefit" in making the necessary case-by-case analysis. This use of the word "benefit" implies that a hearing is optional, indeed beneficial, but not mandatory. Finally, at the conclusion of its second decision, the Sixth

**958**

### IV

Given that the court will abstain from hearing all but five of the proceedings over which it possesses subject matter jurisdiction, it must next determine whether the proceedings that this court will not hear should be remanded back to the various state courts of Alabama and Georgia from which they were removed. It has already been documented that remand motions have been filed in some, but not all, of the adversary proceedings. As to those adversary proceedings in which no such motion has been filed, the court may raise the issue of remand sua sponte. *See Arkansas Dep't of Human Servs. Div. of Medical Servs. v. Black & White Cab Co., Inc. (In re Black & White Cab Co., Inc.),* 202 B.R. 977, 978 (Bankr. E.D.Ark.1996); *Scherer v. Carroll,* 150 B.R. 549, 552 (D.Vt.1993).

Remand of removed proceedings is governed by 28 U.S.C.A. § 1452(b) (West 1994), which provides in material part:

The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground....

Courts have noted that the same considerations that are relevant to the issue of abstention also bear upon the issue of remand. *Twyman v. Wedlo, Inc.,* 204 B.R. 1006, 1020 (Bankr.N.D.Ala.1996); *In re Donington, Karcher, Salmond, Ronan & Rainone, P.A.,* 194 B.R. 750, 759–60 (D.N.J.1996). Accordingly, where the facts before the court mandate or compel abstention, equitable grounds for remand exist under § 1452(b) and re-

mand of the proceeding to state court is favored. *Twyman,* 204 B.R. at 1020; *St. Vincent's Hospital v. Norrell (In re Norrell),* 198 B.R. 987, 998 (Bankr.N.D.Ala.1996); *Balcor/Morristown Ltd. Partnership v. Vector Whippany Assocs.,* 181 B.R. 781, 788 (D.N.J. 1995). Because this court will abstain from hearing all but five of the proceedings over which it possesses jurisdiction, it sees no reason why the proceedings which it will not hear, as well as those over which it does not have jurisdiction, should not be remanded to the various state courts of Alabama and Georgia from which they were removed. To the extent that it is applicable, the court will modify the automatic stay to permit the parties to proceed with the state court litigation.[43] However, if either the plaintiffs who have asserted actions against the Debtor, Beneficial, Household, or Hurley obtain a judgment against the Debtor, enforcement of the judgment will be stayed until further order of this court.

### V

In conclusion, the court will abstain from hearing all but five of the adversary proceedings addressed in this memorandum, the five being Adversary Proceeding Nos. 97–3051, 97–3106, 97–3107, 97–3108, and 97–3109. The court will remand the forty-nine adversary proceedings that it will not hear to the state courts from which they were removed and modify the automatic stay to permit the litigation to proceed in the respective nonbankruptcy forum. Enforcement of any judgment obtained against the Debtor will,

Circuit very clearly ordered the district court to transfer the files in question, index and cross reference those files, and then make its abstention ruling based on the individualized record in each file. *Id.* at 572. Compliance with such an order is certainly possible without holding a hearing. Accordingly, this court does not believe that a hearing is necessary with respect to the adversary proceedings before it since this court does possess the files that are subject to the abstention issue, has indexed and cross referenced these files, and made an individualized determination based upon the record in these files.

**43.** Ordinarily, modification of the automatic stay occurs "[o]n request of a party in interest and after notice and a hearing." 11 U.S.C.A. § 362(d) (West Supp.1997). Notwithstanding

the statutory language, the case law establishes that a court may modify the stay sua sponte when the circumstances deem it necessary. *See In re McDaniels,* 213 B.R. 197, 201 (Bankr. M.D.Ga.1997); *Miller & Miller Auctioneers, Inc. v. Ritchie Bros. Auctioneers Int'l, L.P. (In re Missouri Properties, Ltd.),* 211 B.R. 914, 928–29 (Bankr.W.D.Mo.1996) (collecting cases); *Elder–Beerman Stores Corp. v. Thomasville Furniture Indus., Inc. (In re Elder–Beerman Stores Corp.),* 195 B.R. 1019, 1023 (Bankr.S.D.Ohio 1996) (collecting cases). Given that the court will abstain from hearing all but five of the adversary proceedings before it and remand them to the state courts from which they were removed, it is necessary to modify the automatic stay to enable the litigation to proceed in state court.

however, be stayed until further order of this court.

An appropriate order will be entered.